## FARNUM v. HARRISON. (No. 7043.)

(Supreme Court, Appellate Division, First Department.    April 16, 1915.)

1. CORPORATIONS ⬯238—INSOLVENT CORPORATIONS—LIABILITY OF STOCKHOLDERS—SERVICES OF "LABORERS, SERVANTS, OR EMPLOYÉS."

A bookkeeper was one of the "laborers, servants, or employés" of a corporation, within the meaning of Stock Corporation Law (Laws 1909, c. 61 [Consol. Laws, c. 59]) § 57, providing that "stockholders of every stock corporation shall jointly and severally be personally liable for all debts due * * * to laborers, servants or employés * * * for services," though, as an incident to his ordinary position, he was at times called upon, in the absence of his superiors, to answer inquiries in the ordinary course of business.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 911–913, 930; Dec. Dig. ⬯238.]

2. CORPORATIONS ⬯238—LIABILITY OF STOCKHOLDERS—WAGES—PENAL STATUTE—CONSTRUCTION.

Stock Corporation Law (Laws 1909, c. 61 [Consol. Laws, c. 59]) § 57, making stockholders liable for the compensation of laborers, servants, or employés for services performed by them for the corporation, being a penal statute, must be strictly construed.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 911–913, 930; Dec. Dig. ⬯238.]

Ingraham, P. J., and McLaughlin, J., dissenting.

Appeal from Appellate Term, First Department.

Action by William Farnum against William H. Harrison. From a determination of the Appellate Term affirming judgment of the City Court, defendant appeals. Affirmed.

See, also, 151 N. Y. Supp. 1115.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, DOWLING, and HOTCHKISS, JJ.

---

Hartwell Cabell, of New York City, for appellant.
Louis Boehm, of New York City, for respondent.

DOWLING, J.    Plaintiff has recovered a judgment against the defendant, one of the stockholders of the Wishart-Dayton Auto Truck Company, for the amount of unpaid salary due him for services rendered to the company as a bookkeeper.    The plaintiff originally sued the company itself for his services and recovered judgment therefor. An execution issued thereon having been returned wholly unsatisfied, he commenced this action within 30 days thereafter against the defendant.

[1]  The action is brought pursuant to section 57 of the Stock Corporation Law (chapter 61, Laws of 1909; Consol Laws, c. 59), reading as follows:

"Liabilities of Stockholders to Laborers, Servants or Employés.—The stockholders of every stock corporation shall jointly and severally be personally liable for all debts due and owing to any of its laborers, servants or employés other than contractors, for services performed by them for such corporation. Before such laborer, servant or employé shall charge such stockholder for such services, he shall give him notice in writing, within thirty days after the termination of such services, that he intends to hold him liable, and shall commence an action therefor within thirty days after the return of an execution unsatisfied against the corporation upon a judgment recovered against it for services."

All the requirements of this section have been complied with.    The sole question presented by this appeal is whether the plaintiff, who was a bookkeeper in the employ of said company, and who was to be paid for his services at the rate of $50 a week, is within the scope of the statute.    His services consisted of keeping the books of the company, attending to the banking business thereof, and discharging the usual duties of a bookkeeper in a business.    In addition thereto, in the absence of Mr. Wishart, president of the company (under whose orders he acted), and one Peix (who was in charge of the office in Wishart's absence), the plaintiff answered the inquiries of persons who might call at the office.    It is the defendant's contention that a bookkeeper is not a "laborer, servant or employé," within the meaning of the statute, and that therefore plaintiff cannot recover against a stockholder of the corporation by which he was employed. · The original source of this legislation is to be found in chapter 40, Laws of 1848, entitled "An act to authorize the formation of corporations for manufacturing, mining, mechanical or chemical purposes," section 18 of which read as follows:

"The stockholders of any company organized under the provisions of this act, shall be jointly and severally liable for all debts that may be due and owing to all their laborers, servants and apprentices, for services performed for such corporation."

This provision was construed in Wakefield v. Fargo, 90 N. Y. 213, where it was held that one employed at a yearly salary as a bookkeeper and general manager was not a laborer, servant, or apprentice, within the meaning of the provision in question, and that the services referred to were manual or menial services performed by one of the class whose

members usually look to the reward for a day's services for immediate or present support. The court reached this conclusion by a consideration of the meaning of the terms "laborers, servants, and apprentices," and quoted the definition of Blackstone (book 1, c. 14) as follows:

"The first sort of servant acknowledged by the law of England are menial servants. Another species of servants are called apprentices. A third species of servants are laborers, who are only hired by the day or week."

The court said that, although the word "servant" was general, it was limited by the more specific ones "laborer" and "apprentice," with which it was associated, and comprehended only persons performing the same kind of service. It held that a general manager was not ejusdem generis with an apprentice or laborer, and would not in popular language be deemed a servant. "Laborer" and "apprentice," the court further said, were words of limited meaning and referred to a particular class of persons employed for a defined and low grade of service performed without responsibility for the acts of others, and necessarily excluded persons of higher dignity, as a statute which treats of persons of inferior rank could not by any general word be so extended as to embrace a superior. Thereafter, by chapter 564, Laws of 1890, § 57, "An act in relation to stock corporations," the liability of stockholders for debts "owing to any of its laborers, servants, or employés, other than contractors, for services performed by them for such corporation," was created in the identical language with that used in the statute now under consideration. It will be seen that this changed the former condition of the law by removing, as one of the classes entitled to relief against stockholders, "apprentices," and inserted in place thereof an entirely new class, "employés, other than contractors."

In Palmer v. Van Santvoord, 153 N. Y. 612, 47 N. E. 915, 38 L. R. A. 402, which involved the construction to be placed upon the word "employés," under chapter 376, Laws of 1885, whereby wages were given a preference against the assets of domestic corporations in the hands of a receiver, Andrews, C. J., said:

"The case of bookkeepers or persons employed to make sales of merchandise, or of property manufactured by the corporation, are * * * 'employés,' within the meaning of the act, and their compensation earned is 'wages,' whether such persons are employed by the day, or month or year, and whether the compensation is denominated 'salary' or 'wages' in the contract of employment."

In Matter of Stryker, 158 N. Y. 526, 53 N. E. 525, 70 Am. St. Rep. 489, the court distinguished the case of Palmer v. Van Santvoord, supra, on the ground that in that case the services performed by the claimant were those of a mechanic or laborer, and held in the case before it that the statute for preference was not intended to secure a preference for claims due to the clerical forces engaged in transacting the business, nor to the superintendent, foremen, or officers of the corporation who are compensated by a fixed yearly salary. The court based its opinion, however, largely on the proposition that the most important word in the statute was "wages," and held that the Legislature, by the use of such word, intended to prefer, in

the distribution of the assets of the insolvent corporation, not salaries, nor earnings, nor compensation, and that it was not intended to prefer the claim of all employés, but it was manifestly intended to limit the preference to the particular class whose claims would be properly expressed by the use of the word "wages"; that such word was commonly applied to the payment made for manual labor, or other labor of a menial or mechanical kind, as distinguished from a salary or fee, which denotes compensation paid to professional men. In concurring, Judge Gray called attention to the decision in Palmer v. Van Santvoord, and to the language used by Andrews, C. J., therein, including the holding by the latter that the statute preferring wages proceeded upon a broader legislative policy than the provisions of the act of 1848 heretofore quoted, imposing a liability upon stockholders of corporations for debts due to employés.

[2] The statute which we are now considering is a penal statute, and of course must be strictly construed. But, starting with this proposition, I am unable to find any reason why the words "employé, other than contractor," should be so limited in their meaning as to exclude a bookkeeper from their protection. It is no longer a question of using a word like "apprentice," which had a definite, settled meaning, and which was recognized as designating a class of labor akin to and connected with servants and laborers. It is not a question of protecting a class of people whose earnings are limited by the use of the word "wages," as in the decisions under the law granting a preference. When the Legislature substituted for the word "apprentice," which had a certain, limited meaning, the words "employé, other than contractor," it seems to me that their purpose could only have been to extend the protection given by the statute beyond the class of what the Court of Appeals has called "menial labor" to all the classes of labor beneath the grade of a vice principal or direct representative of the employer. A bookkeeper engaged in keeping the books of a corporation, and attending to its banking affairs, and whose time is spent in the office of his employer, is, it seems to me, an employé whether he is paid an annual salary or a weekly wage, although, as a matter of fact, the plaintiff herein was to be paid his compensation weekly. Nor does the fact that, as an incident to his ordinary subordinate position, he is at times called upon, in the absence of several superiors, to answer inquiries in the ordinary course of business, remove him from the class of employés and promote him to that of an official. Conceding that an officer of a corporation would not be entitled to the protection of the statute, the plaintiff has never come within that category. The only case in which the Court of Appeals has directly passed upon this statute is Bristor v. Smith, 158 N. Y. 157, 53 N. E. 42. In that case the court held that an attorney for a corporation, regularly employed at a fixed salary to perform legal services in connection with its businesss, was not an employé within the meaning of the statute now under consideration. It is quite true that in its opinion the court said:

"To the ordinary reader of the language of this statutory provision, I doubt that it would ever occur that the word 'employés' had any wider significance than to define, in a general way, such classes of persons as were en-

gaged in serving the corporation in subordinate capacities; but, when we apply the rules of construction to the case, any other definition of the word becomes unreasonable, if not impossible, than that it means persons sustaining such relations to the corporation as do laborers and servants. The statute was a continuation of previous legislation, which had for its object the protection of those who earned their living by manual labor, and not by professional services, and who were supposed to be the least able to protect themselves. To such persons, and to all who become employed in subordinate and humble capacities, and to whom the hardship would be great, if their wages or salaries were not promptly paid, the legislative policy is to afford the protection of a recourse to the stockholders of a company, upon the latter's default. Coffin v. Reynolds, 37 N. Y. 640; Gurney v. Atl. & Gt. W. Railway Co., 58 N. Y. 358; Wakefield v. Fargo, 90 N. Y. 213. When, in section 54 of the Stock Corporation Law, the general word 'employés' was added after the words 'laborers' and 'servants,' it could not have been intended from the collocation of words and for the want of reason in the thing, to include persons performing services to the corporation of a higher dignity, such as its legal adviser. Indeed, the appellant would be utterly without any reason in claiming the protection of the statute, if he could not pretend that his agreement with the company made him its employé. But the only effect of that agreement, so far as it bore upon their relations, was to secure to each permanency in the relation of attorney and client and certainly as to the measure of compensation. The lawyer does not lessen the dignity and independence of his position towards his client, or in the community, by making such an agreement. He does not, thereby, descend into that inferior and subordinate class of persons who, being continuously employed in the corporate business for a compensation paid in wages, or in salaries, and being under the orders of the managers of the corporation, are usually regarded as its servants or employés."

I do not think anything in that opinion contravenes the right of the plaintiff to recover herein, for he, performing services as a book-keeper, comes directly within the classification just referred to by the court of those who, "being continuously employed in the corporate business for a compensation paid in wages, or in salaries, and being under the orders of the managers of the corporation, are usually regarded as its servants or employés."

For these reasons I believe the judgment appealed from is right, and should be affirmed, with costs. Order filed.

LAUGHLIN and HOTCHKISS, JJ., concur.

McLAUGHLIN, J. (dissenting). The question presented is whether a person employed as a bookkeeper at a salary of $50 a week is entitled to the benefit of section 57 of the Stock Corporation Law, which provides, among other things, that:

"The stockholders of every corporation shall jointly and severally be personally liable for all debts due and owing to any of its laborers, servants or employés other than contractors, for services performed by them for such corporation."

The provision quoted is similar to a provision in section 18 of chapter 40 of the Laws of 1848, except that the word "employés" is substituted for the word "apprentices." It is penal in its nature, and for that reason should be strictly construed, and, if there is any reasonable doubt as to its being applicable to the plaintiff, then the defendant is entitled to its benefit. Bristor v. Smith, 158 N. Y. 157, 53 N. E. 42.

The court held in Wakefield v. Fargo, 90 N. Y. 213, that a bookkeeper receiving $1,200 a year did not come within the provision of section 18 of the act of 1848, saying:

"It is plain, we think, that the services referred to are menial or manual services; that he who performs them must be of a class whose members usually look to the reward of a day's labor, or service, for immediate or present support, from whom the company does not expect credit, and to whom its future ability to pay is of no consequence—one who is responsible for no independent action, but who does a day's work or a stated job under the direction of a superior."

In Bristor v. Smith, supra, the court construed the section of the General Corporation Law now under consideration, then section 54, now section 57. In that case the person claiming the benefit of the statute was an attorney regularly employed at a salary of $50 per week. In holding that the stockholders were not liable to such person, the court said:

"The statute was a continuation of previous legislation, which had for its object the protection of those who earned their living by manual labor, and not by professional services, and who were supposed to be the least able to protect themselves. To such persons, and to all who become employed in subordinate and humble capacities, and to whom the hardship would be great, if their wages or salaries were not promptly paid, the legislative policy is to afford the protection of a recourse to the stockholders of a company, upon the latter's default."

I am unable to see any distinction between an attorney regularly employed at a salary of $50 per week and a bookkeeper regularly employed at a similar salary. The fact that one is an attorney and the other a bookkeeper does not change the situation or indicate a different legislative intent. Nor do I think it was intended to enlarge the meaning of the act of 1848 by substituting in section 57 the word "employés" for the word "apprentices." If the Legislature intended to include by the word "employés" all persons employed by the corporation, then there was no necessity for using the words "laborers" and "servants." In construing a statute, effect is to be given, if possible, to every word used. It must therefore be assumed that the words "laborers" and "servants" were used advisedly and are not surplusage.

I think the determination of the Appellate Term and the judgment of the City Court should be reversed, and the complaint dismissed, with costs.

INGRAHAM, P. J., concurs.