PEOPLE, by MITCHELL et al., State Industrial Commission, v. INTERBOR-OUGH RAPID TRANSIT CO. (No. 7571.)

(Supreme Court, Appellate Division, First Department.   July 9, 1915.)

1. MASTER AND SERVANT ⬤⟶69—COMPENSATION OF SERVANT—"EMPLOYÉ."

Labor Law (Consol. Laws, c. 31) § 11, requires every corporation, except steam railroads, to pay weekly to each employé the wages earned by him to a day not more than six days prior to the date of such payment.   Section 2 defines "employé" as meaning a mechanic, workingman, or laborer who works for another for hire.   Held, that the statute must necessarily be construed by itself, and such persons as stenographers, accountants, typists, chainmen, levelmen, civil engineers, bookkeepers, draftsmen, structural designers, and clerks are not employés whom the master is bound to pay weekly.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 78–81; Dec. Dig. ⬤⟶69.

For other definitions, see Words and Phrases, First and Second Series, Employé.]

2. MASTER AND SERVANT ⬤⟶69—COMPENSATION OF SERVANT—"EMPLOYÉ."

A rodman, who assists civil engineers by carrying and holding the rods of graduated surveyors, is a member of the engineering staff, and so need not be paid weekly, not being an employé falling within the class of workingmen or laborers.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 78–81; Dec. Dig. ⬤⟶69.]

3. MASTER AND SERVANT ⬤⟶69—COMPENSATION OF SERVANT—"EMPLOYÉ."

An office boy, a chauffeur, a blueprinter for an elevated railroad company, a telephone switchboard operator, a matron, whose duty it was to assist telephone operators in the care of their rooms, etc., are "employés," within the statute, and must be paid weekly; the blueprinter being on the border line, and the chauffeur, if not a mechanic, being in any case a workingman.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 78–81; Dec. Dig. ⬤⟶69.]

4. MASTER AND SERVANT ⬤⟶69—COMPENSATION OF SERVANT—"EMPLOYÉ."

A civil engineer, in charge of all elevated improvements and extension work, is not an "employé," defined by Labor Law, § 2, to mean a mechanical workingman or laborer who works for another for hire, and so, notwithstanding section 10, requiring the payment of employés in cash, he may be paid by check.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 78–81; Dec. Dig. ⬤⟶69.]

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**5. SUBMISSION OF CONTROVERSY ⊙═19—RENDITION OF JUDGMENT.**

The Appellate Division does not sit in an advisory capacity; hence, where, in a submission of a controversy as to whether defendant was liable for a penalty for failure to pay various workmen their wages weekly, a stipulation provided that if the questions were decided for plaintiff judgment should be for a penalty of $50, but if the questions were decided for defendant the proceeding should be dismissed, but made no provision for a judgment partly in plaintiff's favor and partly in favor of defendant, judgment in such case will be rendered for plaintiff for the stipulated penalty.

[Ed. Note.—For other cases, see Submission of Controversy, Cent. Dig. § 21; Dec. Dig. ⊙═19.]

Dowling, J., dissenting.

Submission of controversy between the People, by John Mitchell and others, constituting the State Industrial Commission, and the Interborough Rapid Transit Company. Judgment for the People.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

Edward Quigley, of New York City, for plaintiff.
John Montgomery, of New York City, for defendant.

HOTCHKISS, J. In the operation of the defendant's railroad, it has in its service the following persons, among others:

(1) A stenographer, whose duties are to take dictations by shorthand and transcribe the same on a typewriter. Her compensation is at the rate of $960 per year, and she is paid $80 monthly.

(2) An accountant, whose duties are with bills and payrolls. His compensation is at the rate of $1,500 per year, and he is paid $125 monthly.

(3) A typist, his duties being to copy papers by typewriter. His compensation is at the rate of $540 per year, and he is paid $45 monthly.

(4) A rodman, who assists civil engineers by carrying and holding the rods of graduated surveyors. His compensation is at the rate of $780 per year, and he is paid $65 monthly.

(5) A chainman, who assists civil engineers in surveying and inspecting railroad construction work by carrying a surveyor's chain, with which he measures. His compensation is at the rate of $600 per year, and he is paid $50 monthly.

(6) A levelman, who assists civil engineers in work similar to that of the chainman by carrying an engineer's level and making mathematical calculations. His compensation is at the rate of $1,020 per year, and he is paid $85 monthly.

(7) A civil engineer, who is employed under the principal assistant engineer, and has charge of all elevated railroad improvements and extension work. His compensation is at the rate of $3,000 per year, and he is paid $250 monthly by defendant's check drawn on a local bank convenient to the office with which said employé is connected.

(8) A matron, employed in defendant's office at Ninty-Eighth street and Third avenue, whose duties are in the nature of welfare work in assisting a large staff of telephone operators in the care of their rooms,

preparation of their food, and similar details of their lives. Her compensation is at the rate of $420 per year, and she is paid $35 monthly.

(9) A civil engineer, who has charge of field work in constructing sections of elevated railroad improvements. His compensation is at the rate of $2,700 per year, and he is paid $225 monthly.

(10) A bookkeeper in the defendant's office, who is occupied with the usual office work of a bookkeeper. His compensation is at the rate of $1,200 per year, and he is paid $100 monthly.

(11) A draftsman, who designs and drafts work connected with elevated railroad improvements and extensions. His compensation is at the rate of $1,800 per year, and he is paid $150 monthly.

(12) A chauffeur, who operates an automobile used by engineers in field work. His compensation is at the rate of $1,020 per year, and he is paid $85 monthly.

(13) A structural designer, who draws designs for elevated railroad structures and improvements preparatory to the preparation of plans therefor. His compensation is at the rate of $1,920 per year, and he is paid $160 monthly.

(14) An office boy, whose duty is to "run" (sic) errands and perform the other customary work of an office boy. His compensation is at the rate of $300 per year, and he is paid $25 monthly.

(15) A telephone switchboard operator in defendant's office, who makes telephonic connections on a telephone switchboard. Her compensation is at the rate of $600 per year, and she is paid $50 monthly.

(16) A clerk in defendant's office, who performs general office work of a clerical nature. His compensation is at the rate of $1,080 per year, and he is paid $90 monthly.

All of the foregoing persons are paid in cash, with the exception of No. 7, the civil engineer.

The questions submitted for our determination are:

(1) Do all of the foregoing persons come within article 2, § 11, of the Labor Law? and (2) if not, do any of them, and, if so, which ones? (3) Does the payment of the civil engineer (No. 7) by check as hereinbefore recited constitute a compliance with section 11, art. 2, of the Labor Law?

[1] (A) Section 11, above referred to, requires every corporation (except such as operate steam surface railroads, as to which a different provision is made) to "pay weekly to each employé the *wages* earned by him to a day not more than six days prior to the date of such payment." Section 2 of article 1 of the Labor Law defines the term "employé" to mean "a mechanic, workingman, or laborer, who works for another for hire." I think it unnecessary, in view of this simple and precise definition, to have recourse to the decisions to which we are cited, where the terms used in statutes preferring, in cases of insolvency, the claims of various classes of wage-earners, workers, or other employés have been defined. This court has recently reviewed many of this class of decisions in Farnum v. Harrison (April 16, 1915) 152 N. Y. Supp. 835. Each statute must necessarily be largely a law unto itself, and its proper interpretation must depend upon its own particular language. The statutory definition, which we have here to guide us, prevents any peculiar force being

attached to the terms "wages" and "employé," and confines us to the simple inquiry whether, among the persons enumerated in the submission, there are any who are properly to be classed as mechanics, workingmen, or laborers, as those terms are ordinarily and naturally used.

[2, 3] It scarcely needs argument to show that the following are not within the defined classes: Stenographer, accountant, typist, chainman, levelman, civil engineers (7 and 9), bookkeeper, draftsman, structural designer, and clerk. The case of the rodman is not so clear. His work is apparently largely of a manual nature; but, as his duty is to "assist civil engineers" in their work, I think that we may infer that he belongs to the engineering staff, although in an humble capacity, rather than among the workingmen or laborers, and is accordingly not within the statutory definition. The blueprinter is also on the border line; but I am inclined to think that he may, upon a liberal construction, be deemed to be a workingman, as is the office boy. The matron, upon a similar construction, should be classed as a working-woman, as should the telephone switchboard operator. The chauffeur is (or ought to be) a mechanic, but in any case he is a workingman.

[4] (B) Section 10, above referred to, requires various classes of corporations of which defendant is one to "pay to each employé * * * the wages earned by such employé in cash," and prohibits payment in scrip or store orders. The statutory definition of the term "employé," to which I have hereinbefore referred, applies as well to section 10 as to section 11. It is clear, therefore, that the civil engineer (No. 7), inasmuch as he is not a workingman, mechanic, or laborer, is not within the statute, and payment of his compensation by check is lawful.

[5] In respect of the form of the judgment to be entered, the submission is equivocal. The submission states:

"It is agreed that, if *the questions* above stated be decided by the court in the affirmative, the plaintiff shall have a judgment for a penalty of $50, in accordance with section 12 of article 2 of the Labor Law, but, if said questions above stated be decided in favor of the defendant, the defendant shall have judgment to the effect that it is not liable to any penalty, and shall be entitled to a dismissal of the proceeding."

Both parties waive costs. No provision, in terms at least, seems to have been made for a decision partly in plaintiff's favor and partly in favor of defendant. But inasmuch as we have no power to pass upon moot questions, or to act in an advisory capacity merely, I assume that it was the intention of the parties that defendant should be cast for a penalty of $50 in the event it was found to have violated the law in the case of any of the persons enumerated in the submission.

Therefore there should be judgment for plaintiff for $50. Settle order on notice.

INGRAHAM, P. J., and CLARKE and SCOTT, JJ., concur.

DOWLING, J. (dissenting). The commissioner of labor heretofore gave notice to defendant to comply with section 21 of the Labor Law (chapter 36, Laws 1909) by paying the employés enumerated in

this submission weekly, instead of monthly. Having in mind the beneficent purpose which the Legislature had in view in the passage of the statute in question, of protecting employés from unscrupulous employers, who by deferring the payment of the wages due them might ultimately defraud them of the fruits of weeks of labor, amounting in the aggregate to large sums, such a construction should be given to the provisions of the law as will extend its protection to as wide a field of labor as possible, consistent with the language used therein. The statute is not a penal or preferential one, as was the case where the term "employé" has been limited in its meaning, but is one involving an exercise of the police power of the state and should be liberally construed. So viewed, the definition (in section 2, art. 1, of the Labor Law) of an employé "as a mechanic, workingman or laborer, working for another for hire," taken in conjunction with the term "wages" used in section 11 thereof, appear to me to clearly indicate the employés whom the statute was intended to protect as those engaged in manual or mechanical labor, as distinguished from those occupying professional or executive positions, and who were paid on the smaller scale of wages, rather than on the higher one of salary. It was these subordinates embraced in the first class, whose dependence on their toil made the loss of any of its recompense a serious matter to them, and whose comparative helplessness to assert their right to the prompt reward of their labor, whom the state was solicitous of protecting, rather than the better paid and more independent members of the second class.

This being so, it would seem that the following employés of defendant are not within the scope of the statute: (H) A civil engineer, in charge of elevated railroad improvements and extension work, both office and field, at a yearly salary of $3,000. (J) A civil engineer, in charge of field work in constructing sections of elevated railway, at a yearly salary of $2,700. (L) A draftsman, who designs and drafts in connection with elevated railroad improvements and extensions, at an annual salary of $1,800. (N) A structural designer, drawing designs for elevated railroad structures, at an annual salary of $1,920.

The remaining employés referred to in the submission I think all come under the scope of the statute, viz.: (A) A stenographer. (B) An accountant. (C) A typist. (D) A rodman, who assists civil engineers by carrying and holding graduated surveyor's rods used in their work. (E) A chainman, who assists civil engineers by carrying and measuring with a surveyor's chain. (F) A levelman, who assists civil engineers by using an engineer's level. (G) A blueprinter. (I) A matron, who assists a large staff of telephone operators in caring for their rooms, preparation of their food, and the like. (K) A bookkeeper. (M) A chauffeur. (O) An office boy. (P) A telephone switchboard operator. (Q) A clerk, doing general work.