New York State Bridge Authority, Respondent, *v.* Frank C. Moore, as Comptroller of the State of New York, Appellant.

Argued April 14, 1949; decided July 19, 1949.

*Nathaniel L. Goldstein*, Attorney-General (*Kent H. Brown* and *Wendell P. Brown* of counsel), for appellant. The expense incurred by the State in acquiring the money to finance the original construction of the Mid-Hudson Bridge is an integral part of its " entire investment " for that purpose.

*Lewis L. Delafield* and *Barent L. Visscher* for respondent. I. The statute provides that the State's claim shall consist of its " entire investment for original construction." Money paid by the State for interest is not part of its investment and a fortiori interest is not part of the State's " investment for original construction." II. The computation of the claim of the State should follow the statutory provisions, and when so set up shows that the claim of the State should not include interest on State bonds. III. The Comptroller has inflated the State's claim by the inclusion of interest in a manner which detrimentally affects the Hudson River Valley and the entire State and which could not have been intended by the Legislature.

LEWIS, J. This is a submitted controversy. (Civ. Prac. Act, §§ 546-548.) The appeal is by the Comptroller of the State of New York from a judgment entered upon a nonunanimous order of the Appellate Division in favor of the plaintiff.

The plaintiff, New York State Bridge Authority — to which it will be convenient to refer as the Authority — is " a body corporate and politic " organized under the Public Authorities Law, article 3, title 2, section 527. By that statute the Authority is charged with the duty of maintaining, reconstructing and operating the Mid-Hudson Bridge at Poughkeepsie, which bridge was built by the State (L. 1923, ch. 900, as amd.). The Authority also maintains and operates the Rip Van Winkle Bridge at Catskill (*id.* § 528, subd. 6), the Bear Mountain Bridge (*id.* § 528, subd. 6-a), the Kingston-Rhinecliff Ferry (*id.* § 528-a) and is directed to construct and operate a bridge to span the Hudson River between Kingston and Rhinecliff if it shall be found by the Authority and the Superintendent of Public Works that such action is in the public interest (§ 528, subd. 6-c *id.*, as added by L. 1947, ch. 189, § 8).

The present appeal by the State Comptroller presents a question of statutory interpretation arising out of the financing of the original construction of the Mid-Hudson Bridge — a State project which was opened to the public in August, 1930. (L. 1923, ch. 900, as amd. by L. 1924, ch. 79, and L. 1925, ch. 13.) From that date the bridge was operated under the direction of the State Superintendent of Public Works until March 17, 1933, when chapter 67 of the Laws of 1933 took effect and the Authority, as an independent body, took over its operation and maintenance.

In order to finance the original construction of the Mid-Hudson Bridge, and the reimbursement of the Counties of Ulster and Dutchess for the cost of acquiring land and easements needed for bridge abutments and approaches, the Legislature authorized the expenditure of funds from various sources, including the State's general funds and the proceeds of State bonds to be amortized by tolls collected from users of the structure. (L. 1924, ch. 79, § 1.) Thereafter, by chapter 17 of the Laws of 1926, the sum of $2,200,000, derived from the proceeds of bonds thereby authorized, was appropriated to the construction of the bridge, which bonds were to mature in equal annual amounts over a period of twenty-five years, and to bear interest at 4% annually. The total interest cost to the date of maturity of that first bond issue is $1,099,670. A second issue of State bonds of like terms was authorized by chapter 2 of the Laws of 1927,

in the amount of $4,000,000 of which amount $2,953,083.73 was expended to complete the construction of the bridge. The total interest cost to maturity on the amount appropriated from the two bond issues mentioned above is $2,517,070.46.

Under chapter 900 of the Laws of 1923, and its successive amendments, **the Commissi**oner of Highways — later the Superintendent of Public Works — was directed to charge tolls for the use of the bridge, the proceeds to be applied to reimburse the " *entire investment* of the state for original construction" (emphasis supplied) and the cost to the Counties of Ulster and Dutchess for the acquisition of necessary land and easements, and to the maintenance and operation of the bridge. After the completion of such reimbursement, the bridge is to be maintained free of tolls for public use.

When the plaintiff Authority was first created within the Department of Public Works (L. 1932, ch. 548) it was authorized to issue bonds in its own name, and to apply the proceeds (1) for the reimbursement of Ulster and Dutchess for moneys expended in connection with the building of the Mid-Hudson Bridge as above mentioned and (2) for the construction of the Rip Van Winkle Bridge at Catskill. These bonds were to be secured by a first lien on tolls and other revenues from both bridges — the claim of the State for its investment for the original construction of the Mid-Hudson Bridge being made subordinate to that lien, to be paid after the retirement of the Authority's bonds (*id.* §§ 3, 10). By the enactment of chapter 67 of the Laws of 1933, the existence of the Authority was continued until December 31, 1938, and " thereafter until all its liabilities have been met and its bonds have been paid in full or such liabilities or bonds have otherwise been discharged " (§ 1). That statute also provided (§§ 1, 14, subd. 2) that thereafter the Superintendent of Public Works is to assume jurisdiction of the Authority's rights and properties, and to continue to charge tolls on the bridges until the aggregate of such tolls, " over and above the expenses of maintenance and operation, shall equal the *entire investment* for the original construction of the Mid-Hudson bridge and abutments and the acquisition of real property and easements, as shall be evidenced by certificate of the state comptroller * * *." (Emphasis supplied.) At that time tolls are to cease. This provision as to tolls was re-enacted,

without change material to our inquiry, by the Laws of 1939, chapter 870, section 538, subdivision 2.

The present governing statute is Public Authorities Law, article 3, title 2, as enacted by chapter 870 of the Laws of 1939, and subsequently amended. Two sections presently found under that title are of particular concern in this case.

Section 532-b provides in part:

" § 532-b. FUNDING OF STATE'S CLAIM. Before commencement of construction of the Kingston-Rhinecliff bridge, and before the issuance of bonds or other obligations to pay the cost of construction of such bridge, as authorized by this act, the unpaid balance of the state's claim for the *entire investment* for the original construction of the Mid-Hudson bridge and abutments and acquisition of real property and easements shall be funded and repaid to the state from the proceeds of bonds of the authority issued therefor. * * * " (Added by L. 1947, ch. 189, § 16.) (Emphasis supplied.)

Section 538 also provides in part:

" § 538. TOLLS, RULES AND REGULATIONS * * *. 2. The authority shall continue to maintain and collect tolls on the bridges and shall, subject to the terms of any existing bond resolution, apply all such tolls and other revenues from the operation of the bridges to the following charges in the order named:

" (a) For payment of the cost of maintenance and operation of all the bridges;

" (b) For payment of installments of principal and of interest maturing upon bonds of the authority, if any, outstanding at the time this act takes effect;

" (c) For the reduction of the state's claim for the *entire investment* for the original construction of the Mid-Hudson bridge and abutments and acquisition of real property and easements, as shall be evidenced by the certificate of the state comptroller. * * * " (Added by L. 1947, ch. 189, § 19.) (Emphasis supplied.)

In accord with subdivision (c) of section 538 last quoted above the Comptroller on May 2, 1947, made his certificate to the Authority as to the amount of the State's claim then outstanding. The present controversy arises from the fact that the Comptroller included in the State's claim $2,517,070.46 which

is the combined interest cost to their maturity of bonds issued by the State in 1926 and 1928 to finance the original cost of construction of the Mid-Hudson Bridge.

The plaintiff Authority contends that interest cost is not properly a part of the State's " entire investment for the original construction of the Mid-Hudson bridge ", and consequently should not be included in the amount certified.

The defendant Comptroller contends that the certificate is correct, his position being that it is the policy of the State, as evidenced by the succession of statutes which deal with the financing of the Mid-Hudson Bridge, that the State should eventually be reimbursed for all expenditures from its funds made in connection with that project — including the cost to the State of interest on that portion of its bonds of which the proceeds were devoted to the original bridge construction.

The Appellate Division, by a divided court, has sustained the plaintiff's contention, and ordered that the Comptroller's certificate be amended accordingly.

We thus reach the narrow question: Is the statutory language found in sections 16 and 19 of chapter 189 of the Laws of 1947, (*supra*) — " * * * the entire investment [of the State] for the original construction of the Mid-Hudson bridge " — intended to include the cost to the State of interest on bonds issued to finance that project?

Neither the industry of counsel nor our own research has disclosed a reported case which bears upon this question either directly or by analogy. Consequently, we turn to rules of construction and other means to aid us in ascertaining the legislative intent.

The word " investment " is a term which " * * * has no technical definition as applied to money and usually its meaning must be determined from the context." (*Genesee Trustee Corp.* v. *Smith*, 102 F. 2d 125, 127.) Nor are the ordinary business definitions of " investment " of assistance in this case where the Legislature has spoken in general terms of an outlay of State funds in the accomplishment of a public project.

We may assume, however, that by repeatedly and consistently placing the word " entire " immediately before " investment " the Legislature intended the word " entire " to serve some purpose. (*People* v. *Dethloff*, 283 N. Y. 309, 315; *Allen* v. *Stevens*,

161 N. Y. 122, 145; *Palmer* v. *Van Santvoord*, 153 N. Y. 612, 616.) In ruling that words in a statute are not to be rejected as superfluous when it is practicable to give each a distinct and consistent meaning, Chief Judge ANDREWS, writing for this court in *Palmer* v. *Van Santvoord* (*supra*), gave the following quotation from Lord COKE (p. 616) : " ' The good expositor * * * gives effect to every word of the statute; he does not construe it so that anything should be vain and superfluous, nor yet make exposition against express words, but so expounds it that one part may stand agreeable with the other and all may stand together.' "

Applying this rule to the statutes with which we are dealing our thought is that in our search for the legislative intent we should give weight to the fact that, in making provision for ultimate payment of the State's claim for its " investment for the original construction " of the Mid-Hudson Bridge, the Legislature consistently used the word " entire " in apposition with the word " investment ". As we read the statutes to which reference has been made the repeated use of the word " entire " before " investment " serves to express the Legislature's intent that all expenditures made necessary by the project, including interest on bonds issued to finance the cost thereof, are to be considered a part of the State's " investment for the original construction ". In other words the phrase " entire investment " has a broader and more inclusive import than the word " investment " standing alone. The two words together connote all items of cost to the State of the Mid-Hudson Bridge, of which cost one item is that of interest exceeding $2,500,000. In fact the word " entire " used in juxtaposition with " investment " serves to point up and reinforce the Comptroller's claim that the Legislature intended that the State and the Counties of Ulster and Dutchess should be reimbursed from bridge tolls for all items which go to make up the entire outlay for the project.

When the Mid-Hudson Bridge was first authorized in 1923, the only financial arrangement for its construction was a preliminary appropriation direct from the State Treasury. Nothing in the statute which authorized such construction (L. 1923, ch. 900) made provision for the issuance of State bonds or indicated that such a course was contemplated. Accordingly, we assume that the clause " the *entire investment of the state* for

original construction and acquistion of real property and ease-
ments  *  *  * '' (emphasis supplied) was intended to include
all expenditures made by the State in connection with the
original construction of the bridge and related expenditures
indicated by the statute.

With the enactment of amendments (L. 1924, ch. 79; L. 1925,
ch. 13), the recurrence of the phrase '' the entire investment
of the state  *  *  * '' persisted as originally incorporated in
the statute.  However, those amendments transferred from the
State to the Counties of Ulster and Dutchess the duty of acquir-
ing the land and easements essential to the construction of the
bridge abutments and authorized those counties to issue bonds
to finance such purchases.  By the statute last cited above pro-
vision was also made for the reimbursement of those counties
for such outlays and the amortization of county bonds issued
for that purpose.  The Superintendent of Public Works was
directed, after depositing in the State Treasury that amount of
the toll receipts which should equal '' the entire investment
of the state for original construction'', to pay over toll receipts
thereafter to the Counties of Ulster and Dutchess, '' *  *  *
and shall continue to make such payments until the *entire
original investment of such counties* for the acquisition of
real property and easements shall have been repaid.  Moneys
so received by the treasurers of such counties *shall be applicable
to the payment of the principal and interest of bonds, if any,*
issued for the purpose of acquiring such real property or ease-
ments, or shall otherwise be applicable to such county purposes
as the board of supervisors, by resolution, shall determine.''
(L. 1925, ch. 13, § 3.)  (Emphasis supplied.)

The Appellate Division held that in the light of the statutory
provision last quoted above, which directed that reimburse-
ment to the counties should include interest on bonds, the absence
of a similar provision for reimbursement of the State indicates
that the Legislature did not intend the State to be reimbursed
for the interest paid on its bonds.  We are inclined, however, to
agree with the defendant's contention that the direction as to
the broad use to which the counties are permitted to put the
reimbursed funds serves rather to indicate that the Legislature
meant by the phrase '' entire investment '' the total expendi-
tures, respectively, of the counties and of the State for the con-
struction of the bridge, including the payment of interest on

bonds which had to be issued in order to obtain the funds to purchase land and easements and to construct the bridge. The Authority was created by chapter 548 of the Laws of 1932, and was thereby authorized to issue its own bonds, pledging the tolls and other revenues as security therefor — the claim of the State being made secondary to that of the Authority's bondholders. The proceeds of the bonds were directed to be applied '' First for the reimbursement of the counties of Ulster and Dutchess for moneys expended by such counties, without interest, pursuant to the provisions of section one of chapter nine hundred of the Laws of nineteen hundred twenty-three, as last amended by chapter thirteen of the Laws of nineteen hundred twenty-five * * * ''. The phrase '' without interest '' seems clearly to refer, not to payment by the counties of interest on their bonds (for L. 1925, ch. 13 remained in effect) but to payment of interest to the counties by the State in consideration of its debt to them. Much the same provision as to reimbursement of the counties is contained in section 6 of chapter 67 of the Laws of 1933.

In our view, moreover, further indication of the intent of the Legislature with respect to the expenditure of State funds may be found in the overall statutory scheme under which the Authority was created. Not only was the reimbursement of the '' entire investment '' of the State in the Mid-Hudson Bridge expressly directed, but when the acquisition and construction of other bridges and the acquisition of the Kingston-Rhinecliff Ferry were contemplated the State set up the Authority as a quasi-autonomous body charged with the duty not only of building or acquiring the facilities but also of financing those projects. The Authority was to issue its own bonds and notes, secured by its own income — the tolls and revenue from the facilities — (see Public Authorities Law, §§ 532, 532-a), upon which the State was not to be liable — '' nor shall [the bonds] be payable out of any funds other than those of the authority '' (id. § 534). Remedies of bondholders are given against the Authority, not against the State as such (id. § 537). The Authority is required to pay for the use of agents, employees and facilities of the Department of Public Works (id. 528, subd. 3). For all practical purposes — so far as finances are concerned — the Authority is an entity separate and apart from the State itself. It thus becomes apparent that at least one of the purposes of the Legislature in

establishing the Authority was to provide a plan for construcing and acquiring Hudson River crossing facilities which would not become a charge against the general funds of the State Treasury.

In the light of these circumstances, we conclude that the Legislature did not intend State funds to be depleted to the extent of some two and one-half million dollars by the method of financing which was a matter of the Legislature's own choosing and by means of which the building of the Mid-Hudson Bridge was accomplished. On the contrary, we construe the phrase " entire investment for the original construction " to include interest paid and to be paid on bonds issued by the State to defray the cost of that project.

Accordingly, the judgment should be reversed and the relief requested by the plaintiff denied, without costs.

LOUGHRAN, Ch. J., CONWAY, DESMOND, DYE, FULD and BROMLEY, JJ., concur.

Judgment reversed, etc.