OPINION OF THE COURT
 

 Per Curiam.
 

 Petitioner, a corporation engaged in the operation of a Spanish language television network, leased commercial office space in Manhattan in September 1981. The
 
 lSYz-year
 
 lease was the product of extensive negotiations on petitioner’s rights and obligations in renovating the premises. The lease incorporates petitioner’s agreement to spend approximately
 
 *619
 
 $1,000,000 to improve the premises in a provision which reads as follows: "This Lease is made with the understanding and agreement that Tenant will spend approximately $1,000,000 to improve, furnish, equip and/or alter the premises being let hereunder in accordance with plans and specifications to be approved by Landlord, as required under the within lease. It is a substantial consideration of the Landlord in renting the space to Tenant at the rental referred to herein that Tenant expend such minimum sum, and failure to so improve the premises shall be deemed a substantial default on the part of Tenant.”
 

 Pursuant to this provision, petitioner expended $1,446,166 in major capital improvements during the tax years June 1, 1980 through May 31, 1983. In January 1984, respondent, Department of Finance of the City of New York, assessed a deficiency against petitioner of $98,503, including back taxes and interest, for failure to pay commercial rent tax on the sums thus expended. At a subsequent hearing to reconsider the determination, petitioner argued that any payments made by a tenant pursuant to a lease for capital improvements to the premises it occupies do not constitute "rent” within the meaning of the commercial rent tax law (Administrative Code of City of New York § 11-701 [6]). Under that local statute, rent is defined as: "The consideration paid or required to be paid by a tenant for the use or occupancy of premises, valued in money, whether received in money or otherwise, including all credits and property or services of any kind and including any payment required to be made by a tenant on behalf of his or her landlord for real estate taxes, water rents or charges, sewer rents or any other expenses (including insurance) normally payable by a landlord who owns the realty
 
 other than expenses for the improvement,
 
 repair or maintenance
 
 of the tenant's premises”
 
 (emphasis added) (Administrative Code § 11-701 [6], formerly § L46-1.0 [6]).
 

 Respondent, relying on a prior department interpretation of "improvement” expenses, contended that the statutory exclusion refers only to "voluntary expenditures” for "minor, nonstructural improvements” which are not intended to "save the landlord the expense of doing the work itself’ (Department of Finance, opn letter, June 7, 1984, 4 NY Tax Rep [CCH] ]j 400-155). The Hearing Officer, adopting respondent’s interpretation of "improvement” expenses, upheld the deficiency assessment. Finding that petitioner’s commitment to make improvements was "part of the bargained-for consideration” in the
 
 *620
 
 lease and that the improvements entailed reconstruction and major rehabilitation of the building for the primary benefit of the landlord, the Hearing Officer concluded that petitioner’s expenditures did not fall within the statutory exclusion. A final determination adopting the Hearing Officer’s findings and conclusions was issued by respondent’s Commissioner. Thereafter, petitioner commenced this article 78 proceeding.
 

 Upon transfer of the proceeding to the Appellate Division, that court annulled respondent’s determination, partially on the ground that the "clear language of the statute” (126 AD2d, at 344) contravenes respondent’s narrow reading of the statutory exclusion. We agree. As the Appellate Division aptly explained, where the language used in a taxing statute is neither special nor technical, but consists of common words of clear import, there is little reason to defer to a contrary interpretation given by the administrative agency. In such cases, the clear meaning of a statutory provision cannot be altered by invocation of special administrative competence or expertise
 
 (see, Matter of Alamo Assocs. v Commissioner of Fin. of City of N. Y.,
 
 71 NY2d 340, 346;
 
 Kurcsics v Merchants Mut. Ins. Co.,
 
 49 NY2d 451, 459;
 
 American Locker Co. v City of New York,
 
 308 NY 264, 269; McKinney’s Cons Laws of NY, Book 1, Statutes § 232).
 

 Here, the statutory language is unambiguous and nontechnical. Whatever else "rent” may include as defined in the local law, it clearly excludes, without express or implied qualification, "expenses for the
 
 improvement,
 
 repair or maintenance of the tenant’s premises” (emphasis added). Contrary to respondent’s contention, this plain language admits no distinction between minor and major improvements, between those primarily made for the benefit of the landlord and those for the tenant, or between those bargained for as consideration under the lease and those initiated at will by the tenant. The term "improvement” commonly refers to a valuable addition or amelioration of real estate, "amounting to
 
 more than mere repairs or replacement
 
 * * * and intended
 
 to enhance its value, beauty or utility”,
 
 including "any permanent structure or other development” or "expenditure to extend the useful life of an asset[, which is] capitalized as part of the asset’s costs” (Black’s Law Dictionary 682 [5th ed] [emphasis added]). This term, without condition or modification in the statute, should be given its ordinary meaning and significance, not the quite different meaning — indeed, the virtually opposite meaning-urged by respondent on the basis of a prior administrative
 
 *621
 
 ruling
 
 (see, McGoldrick v Family Fin. Corp.,
 
 287 NY 535, 539;
 
 Matter of Penney Co. v Lewisohn,
 
 40 AD2d 67, 69,
 
 affd
 
 33 NY2d 528). Accordingly, the statutory exclusion for "improvement” expenses was properly read by the Appellate Division to include all the expenditures made by petitioner during the tax years in question, whether or not a part of its bargain with the landlord, for the alterations and renovations of the leased premises. Consequently, the determination for tax deficiency was properly nullified.
 

 Our decision in
 
 Matter of Mobil Oil Corp. v Finance Adm’r of City of N. Y.
 
 (58 NY2d 95) does not support a contrary result. In that case, we held that "maintenance” expenses under the same statutory provision did not extend to sums paid by the tenant for cleaning and janitorial services. We explained that the term "maintenance” did not include work necessary to keep the premises clean, but "only work done to prevent and cure depreciation — i.e., such things as painting, replacing window sashes, etc.”
 
 (id.,
 
 at 100). Only "in the broadest sense” of the term might "maintenance” be thought to embrace mere cleaning
 
 (id.,
 
 at 99). Hence, we upheld the Finance Director’s more conventional, albeit narrower, interpretation
 
 (see,
 
 Black’s Law Dictionary 859 [5th ed]).
 

 Here, by contrast, the renovation undertaken by petitioner clearly falls within the general sense of the term "improvement”. The interpretation urged by respondent — which would exclude the capital alterations and additions made by petitioner — is not merely a narrow reading of the term; it is a peculiarly cramped one. It denudes the term "improvement” of that which is an integral part of its ordinary meaning — i.e., the substantial enhancement of property value or utility. The statutory provision in question contains no words of limitation or modification justifying such a construction, and there is nothing in the statute to suggest that the term "improvement” should not be given its full significance
 
 (see, Price v Price,
 
 69 NY2d 8, 15-16;
 
 People v Shakun,
 
 251 NY 107, 114; McKinney’s Statutes §§ 114, 232). Moreover, to accept respondent’s contention — that "improvement” is limited to minor nonstructural work which does not significantly enhance the value of the property — would render that term superfluous and redundant in the statute; "improvement” would then add nothing to the words "repair” and "maintenance”. Such a construction, which would deprive the term of its own separate meaning, should be avoided for that reason as well
 
 (see,
 
 
 *622
 

 Feinstein v Bergner,
 
 48 NY2d 234, 239;
 
 New York State Bridge Auth. v Moore,
 
 299 NY 410, 416; McKinney’s Statutes § 231).
 

 Finally, inasmuch as we ground our decision on the plain meaning of the statutory language, we have no need to address the propriety of the Hearing Officer’s refusal to consider parol evidence of the meaning and purpose of the "mandatory improvement” provision in the lease.
 

 Accordingly, the judgment of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone, Hancock, Jr., and Bellacos a concur in Per Curiam opinion.
 

 Judgment affirmed, with costs.