In the Matter of the Petition of METROPOLITAN LIFE INSURANCE COMPANY, Petitioner, against NEW YORK STATE LABOR RELATIONS BOARD and JOHN P. BOLAND and Others, as Members of the New York State Labor Relations Board, Respondents.

Supreme Court, Special Term, New York County, July 25, 1938.

*Samuel Seabury*, for the petitioner.

*Burton A. Zorn* [*Eugene Cotton* and *Henry Silver* with him on the brief], for the respondents.

*Benjamin C. Ribman*, for Peter Callahan and others, intervenors.

*Boudin, Cohn & Glickstein* [*Louis B. Boudin* of counsel], for Local 30, intervenor.

STEUER, J. On March 23, 1938, the respondents, comprising the New York State Labor Relations Board, made an order that the business of the petitioner within the city of New York and the counties of Nassau, Suffolk and Westchester, constituted a unit appropriate for the purpose of collective bargaining. On April 7, 1938, the Board directed that an election be held among petitioner's agents within this unit to determine whether they desired to be represented for the purpose of collective bargaining by Local 30 of the Industrial Insurance Agents, a C. I. O. unit. The election resulted in a majority in favor of the union and the Board thereupon made an order certifying it as the exclusive representative of all petitioner's agents in this area. Local 30 then requested a conference for the purpose of arriving at an agreement. Petitioner refused to confer. On June 7, 1938, the respondents made an order finding petitioner guilty of an unfair labor practice and directed it to bargain with the local and to post notices in its offices within the area that it would so bargain. The petitioner still refused and stated its grounds for so doing. It now moves to review the proceedings of the Board. The latter, by cross-motion, moves for a decree to enforce its order and to require petitioner to comply with it. The grounds of petitioner's motion are discussed separately.

The State Labor Relations Board was created by chapter 443 of the Laws of 1937, which comprises article 20 of the Labor Law. It is petitioner's claim that its employees are not persons provided for in the Labor Relations Act and hence the Board has no jurisdiction to make orders in regard to them. In the Labor Relations Act (§ 701, subd. 3) the act defines employees as follows:

" 3. The term ' employees ' includes but is not restricted to any dividual employed by a labor organization; any individual whose employment has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice, and who has not obtained any other regular and substantial equivalent employment; and shall not be limited to the employees

of a particular employer, unless the article explicitly states otherwise, but shall not include any individual employed by his parent or spouse or in the domestic service of any person in his home, or any individuals employed only for the duration of a labor dispute, or any individuals employed as farm laborers."

This definition is obviously incomplete. When contrasted with the National Labor Relations Act it will be seen that the definition therein is virtually the same except that in the National act the definition commences as follows: " The term ' employee ' shall include any employee." In other words, in the National act a complete definition is given to the effect that all employees are referred to with the exceptions noted and certain variations from what might be the dictionary definition of the word; whereas in the State act the definition is restricted to the exceptions and contains no statement that the term refers to any general class. Petitioner asserts that this was done advisedly and for the reason that the Labor Law, of which the act was a part, contains a definition of the term " employee " and that the omission of a general definition of that word is because it was already defined by the existing legislation contained in the same law. That definition is found in section 2, subdivision 5, of the Labor Law and reads: " 5. Employee means a mechanic, workingman or laborer working for another for hire." It is well settled that this definition refers to manual laborers only. (*People* v. *Interborough Rapid Transit Co.*, 169 App. Div. 32; *Van Vlaanderen* v. *Peyet Silk Dyeing Corp.*, 278 Fed. 993.) It follows that if the definition to be applied to employees in the act is the definition found in the Labor Law as restricted and enlarged by the definition found in the Labor Relations Act, that the persons employed by the petitioner are not employees within that definition and the consequence would be that the Board has no power to make orders in regard to them. The question is one of legislative intent and the controversy is whether the dictionary definition of employee or the definition as given in the Labor Law shall prevail. As indicating the legislative intent petitioner points out that in many of the acts which are parts of the Labor Law where a different intention in regard to the persons referred to was had by the Legislature, a different definition of the term employee was given by the statute. This is so in the Workmen's Compensation Law (Laws of 1914, chap. 41, § 3, subd. 4), the Unemployment Insurance Act (Laws of 1935, chap. 468, § 502, subd. 2), and certain others. The Board contends that the meaning of employee intended in the act is the dictionary definition. It cannot meet petitioner's argument and its attempts to do so have either resulted in additional

grounds for the petitioner's viewpoint or in contentions so patently refutable that a recitation of them would serve no purpose. Counsel for the Board finally reaches the conclusion that the omission of the words "any employee" included in the National act, is a typographical error or an inadvertency.

While the power of the court to supply omissions of the Legislature, no matter how obvious, is highly restricted (*McKuskie* v. *Hendrickson*, 128 N. Y. 555), where, as here, the question is the determination of the intent, it is permissible to consider the purpose of the statute as set out in it. Section 700 states the reasons for the act. In paraphrasing these it is found that the Legislature is seeking to supply actual liberty of contract between employer and employee in place of the theoretical liberty long recognized to be virtually non-existent. The language used indicates an application to all industry, not restricted to manual workers. It would be very strange if the Legislature intended to restrict what it believes will accomplish a beneficent purpose to what in this State would be a fraction of the working population. To so hold would be to determine that if this were done advisedly the Legislature was engaged in the practice of a deceit. The only natural conclusion is that the intention was to use the dictionary meaning of the word employee.

The second ground of petitioner's objection is that in fixing the unit for collective bargaining the Board acted unreasonably, arbitrarily and in disregard of relevant practical considerations. There is nothing so inherently wrong in the unit selected that a court can find that its selection was necessarily arbitrary. From the viewpoint of the petitioner it is perhaps inconvenient. In the opinion of the Board it is a suitable unit from the viewpoint of the employees desiring to bargain collectively. The matter would appear to be one peculiarly within administrative discretion and not subject to attack.

The third point finds its basis in the particular wording of the direction of the Board to the petitioner. The point is that the direction is that petitioner shall bargain with Local 30 as the "exclusive representative of its agents" within the area. It is contended that this prevents petitioner from making individual contracts with such of its agents as desire to deal with it individually and that this is repugnant to constitutional provisions guaranteeing freedom of contract. The only support furnished to this argument is the action of the Board itself. If the intent of the Board is to prevent such dealings its acts are unconstitutional and cannot be enforced by judicial sanction. The Board has preferred not to disclaim such intention while not actively asserting it. This

gives rise to the belief that it is the Board's wish that such contracts may not be made while not being put in the position of actually forbidding them. Despite the attitude taken on this motion it is assumed that the Board intended no such direction and there being none, the argument falls.

The next argument is that in giving the Board the power to fix the unit for collective bargaining, the result of an election may be determined after gerrymandering and that this is an unconstitutional delegation of power. Here also a distinction is found between the National act and the State act. The National act prescribes the unit (U. S. Code, tit. 29, § 159, subd. [b]), as "employer unit, craft unit, plant unit, or subdivision thereof." The State act provides (§ 705, subd. 2), "employer unit, craft unit, plant unit or any other unit." The Board contends that the words "any other unit" mean the same as a subdivision of any of the foregoing and hence, while different words are used, the National and State units are the same. It would seem that this is so. It is difficult to conceive of a unit other than the specific units mentioned, which is not a subdivision of one of them. If this is so there is no unconstitutional delegation of power because the course of conduct is not only defined but strictly delimited. It is true that the argument that the power to fix the unit may influence or control the result of the election, finds support in the facts of the instant application. The record shows that the unit advocated by the petitioner was the whole of the State; by the American Federation of Labor, several small subdivisions, and by the C. I. O. the city of New York and the counties of Nassau, Suffolk and Westchester. The Board selected the unit advocated by the C. I. O. The closeness of the election indicates that a different unit might have produced a different result. This is, however, no ground for upsetting the statute. It is apparent that some one must fix the unit and the delegation of authority to the Board properly meets the procedural requirement.

The fifth ground is that the act authorizes the designee of a majority of the employees to demand the negotiation of an agreement and that the failure of the employer to negotiate is attendant with consequences. It is claimed that this gives a lay agency power to create a legal duty and is an unlawful delegation of power. It is futile to reargue this point, it having previously been determined in regard to the National Labor Relations Act which in this instance is indistinguishable from the State act. (*Labor Board* v. *Jones & Laughlin Steel Corp.*, 301 U. S. 1.)

The sixth argument refers to article V, section 2, of the State Constitution, providing for the creation of certain State departments, and section 3, prohibiting creation of new departments. It is claimed that the Board, created by the Labor Relations Act, is a separate department not amenable to the control of any existing department and hence is unconstitutional. Various instances are cited to show that while the Board is declared to be a division of the Department of Labor it is actually beyond the jurisdiction of the responsible heads of that department. It would appear that the powers of independent action given to the Board are somewhat remarkable. It is quite true that its decisions and findings are subject to no departmental supervision (§ 702, subd. 9), but whether the Board is regarded as a subdivision of the Department of Labor or not, this would be a proper provision. As to the provisions in regard to its expenses, budget and the tenure of office of the Board, these do not affect the petitioner. Even if they are factors which might be deemed to sever connection between the Board and the Department of Labor, they can be remedied by appropriate legislation knitting the administrative details more closely into the department itself. The petitioner is not in a position to raise any question on this point in that it is unharmed by the fact that the provisions in question might lead to the conclusion that an agency otherwise within a department might be deemed independent.

The motion is denied and the cross-motion is granted with the condition that the direction to the petitioner in so far as it directs that negotiations be carried on " exclusively " with Local 30 is deemed to mean with no other person as a representative of another but not to prevent negotiations between the petitioner and any of its employees each acting for himself.