In the Matter of the Application of the NEW YORK STATE LABOR RELATIONS BOARD, Petitioner, for an Order against HERMAN FRANKLIN McCHESNEY, Owner of Adelphi Hospital, Respondent.

Supreme Court, Special Term, Kings County, July 1, 1940.

*Daniel Kornblum,* for the petitioner.

*King & Lynch [Stanley Lieberman* of counsel], for the respondent.

NOVA, J.   The State Labor Relations Board moves herein for an order confirming its determination against the respondent requiring him to bargain collectively with his employees.   Respondent owns and operates Adelphi Hospital, a private institution operated solely for profit, but which, like other institutions of identical character, admittedly serves a most useful purpose in the life of the community.   To quote, in this respect, the language of the respondent: " Adelphi Hospital is one of approximately sixty-five (65) private hospitals in the City of New York.   These private hospitals serve a peculiar, essential requirement of the community.   There are approximately fourteen thousand doctors in the City of New York of which some four thousand have appointment to the staffs of some ninety-nine (99) voluntary hospitals. Unless a doctor is attached to the staff of a voluntary hospital, his patients cannot be admitted to a voluntary hospital and be treated by him.   Therefore, ten thousand doctors would have no hospital to which their patients might be admitted to be treated by them, but for the existence of the private hospitals.   The voluntary hospitals have about seven thousand five hundred (7,500) beds to accommodate their private and semi-private patients; the private hospitals have about four thousand beds.   It is academic that a patient's welfare and recovery depend to a large extent upon treatment by a physician or surgeon of the patient's own choosing.   It, therefore, follows that were it not for the existence of private hospitals, the patients of more than two-thirds of all of the physicians and surgeons in this city would have to be referred to other physicians and surgeons for hospital treatment in voluntary hospitals."

Respondent's hospital requires the services of some fourteen service and maintenance employees.   Under the procedure set up by the New York State Labor Relations Act (Laws of 1937, chap. 443), they chose the Building Service Employees International Union, Local 80 of the A. F. of L., as their collective bargaining agency with respect to wages, hours and other conditions of

employment. The employer refusing to deal through such medium on jurisdictional grounds, an unfair labor practice charge was filed against him with the State Labor Board, and the latter, after hearings, sustained the employees and issued the order which it now seeks to enforce. Respondent's maintenance and service employees, as aforesaid, include operators, orderlies, kitchen help, maids and waitresses, engineer and night men. The entire group was constituted a single unit by the Board appropriate for the purpose of collective bargaining within the meaning of the statute (Labor Law, § 705).

Respondent questions the jurisdiction of the Board largely on the ground that the indicated legislative intent in the passage of the statute in question was to control labor relations in industry, apparently in the sense (See definition as given in Webster's New International Dictionary) of a recognized business activity which employs much labor and capital and is a distinct branch of trade. Apart from the refinements of definition into which such a discussion must inevitably lead, this issue seems to have been determined in a manner which is controlling upon this court by the decision of the Court of Appeals in *Matter of Metropolitan Life Ins. Co.* v. *Labor Relations Board* (280 N. Y. 194). The very argument advanced by respondent in this connection to show, by reference to the language used in the statute itself, that the Legislature had a broader classification of industry in mind is merely one of degree. As the petitioner contends, the language covers equally well, although in an admittedly much more restricted scope, labor conditions in any field of employment where the objective is the earning of a livelihood on one side and the gaining of a profit on the other. As illustrative of respondent's argument in this connection, the use in the statute of the term " sweat shop " is seized upon, but " sweat shop " conditions may exist just as well in a private hospital by reason of overwork and underpay as in the clothing or other manufacturing field. The contention that the act was meant to apply to the broad fields of industry is defeated by the decision in the *Metropolitan* case which held that it applies to insurance agents in the New York city area, and other decisions of our courts interpreting the statute in this city have held that it applies to employees of banks and in other restricted fields. The Court of Appeals, in the *Metropolitan* case, specifically rejected the argument that the application of the statute was to be confined to employees as defined in article 1 of the Labor Law, to wit: " Mechanic, workingman or laborer." The decision in this case indicates that the provisions of the statute are to be given a liberal application within its own language or definition, excepting the

qualifications expressly exempted in sections 701 and 715 thereof. The act itself provides that it is to be " liberally " construed for the accomplishment of its purpose of fostering collective bargaining as between employer and employees.

Respondent, calling attention to the fact that the Labor Board admits it has no jurisdiction over employees of a voluntary hospital, argues that there should be no distinction in this respect as against a private hospital, inasmuch as their functions in the care of the sick, viewed in the sense of public need, are identical, but again judicial decision has indicated a distinction between the two types of institution. As stated by the Appellate Division in this Department, in construing section 876-a of the Civil Practice Act, a statute which it declared to be in *pari materia* to the one here involved: " We believe, even though the statute does not expressly exempt charitable corporations, that the Legislature never intended it to apply to an institution such as plaintiff [Jewish Hospital of Brooklyn]. While those involved in a labor dispute, as defined by the statute, need not stand in the relation of employer and employee, they must be engaged in the same ' industry, trade, craft or occupation.' These words connote and emphasize one common thought, to-wit: that the parties to the controversy shall be engaged in the same business enterprise or commercial pursuit, one motivated by the desire for profit, the other by the desire to earn a livelihood. * * * Obviously plaintiff is not engaged in any industry, trade, craft or occupation for profit within the meaning of the statute." (*Jewish Hospital of Brooklyn* v. " *John Doe*," 252 App. Div. 581, 584.)

As asserted by petitioner, the argument advanced by respondent in this respect could be employed with equal force by a large milk corporation, " claiming that it performs the same function as a charitable organization devoted to the free distribution of milk," or " an expensive hotel might argue that it performs functions similar to those of a charitable institution offering free lodging to the community," and " a chain clothing store might argue that it performs functions similar to those performed by an organization such as the Salvation Army engaged in the distribution of free clothing to the community."

It is to be noted that while under section 876-a of the Civil Practice Act, which was before the Appellate Division in the *Jewish Hospital* case, the Legislature did not specifically exempt from the provisions of that statute the employees of a charitable association, corporation or enterprise, the Labor Relations Act does make such a specified exemption.

Respondent, pointing out that it is not possible for the law-makers always to foresee the application of the general language they use, argues that this court should read into the language of the statute an implied intent to exempt from its provisions private hospitals catering to the sick of a community and fulfilling in this respect an essential purpose. The answer to this argument is that there is no such obvious oversight and no such obvious absurdity, inconvenience or injustice in result from applying the statute according to the express terms thereof, as respondent claims. Respondent paints a picture of conditions which might ensue were labor troubles, with their attendant strikes, picketing, walk-outs and similar situations, to visit a hospital where critically sick persons are confined. Respondent at the same time admits that even without the statute under consideration its employees would be free to join a union. It follows that the results pictured might ensue in any event, although subject to injunctive relief from the courts.

The final argument advanced by the respondent, based on the alleged unconstitutionality of the enactment, is, as I see it, without merit, and is sufficiently answered in the foregoing discussion.

Petitioner's application is granted.