## John Hancock Mutual Life Ins. Co. of Boston
## v. Pennsylvania Labor Relations Board

*Joseph S. Conwell*, for petitioner.

*Alex Satinsky* and *Claude T. Reno*, Attorney General, for Pennsylvania Labor Relations Board.

LEVINTHAL J., May 5, 1942.—This is a petition for review of the decision and order of the Pennsylvania Labor Relations Board of May 7, 1940, directing the John Hancock Life Insurance Company of Boston (1) to cease and desist from interfering with its employes in the exercise of their right to self-organization, and (2) to post a copy of this decision and order within ten days and to have it remain so posted for a period of 30 days.

On January 4, 1938, a charge was filed against the John Hancock Life Insurance Company complaining of unfair labor practices under section 6(a) of the Pennsylvania Labor Relations Act of June 1, 1937, P. L. 1168. Said unfair labor practices were alleged to have been committed in 1937. On January 25, 1938, a complaint was issued and, after preliminary motions, hearings were held on nine different days. The board filed its decision and order on May 26, 1939; exceptions thereto were filed by respondent on June 23, 1939, and argued on July 18, 1939, and the decision and order of the board was made final on May 7, 1940. Respondent on July 9, 1940, filed a petition with this court for review, and a stay of proceedings was duly entered. No answer to this petition was ever filed, and the matter was not argued until more than a year and a half after the case came into our court.

It is urged that the Pennsylvania Labor Relations Act does not apply to an insurance company because it is not an "industry" and that it confers no rights on

insurance agents because they are not "employes". In addition, respondent argues that the proceedings lacked the impartiality and "fair play" required of hearings before quasi-judicial tribunals. Respondent further avers that, by reason of the numerous delays in the proceedings, the original question concerning the alleged violation has become moot.

1. Construing the act liberally, as we must, can it be said that the insurance business of respondent company is exempt and that insurance agents are denied any rights thereunder?

Pertinent sections of the Pennsylvania Labor Relations Act are section 2 (43 PS §211.2) :

### Findings and policy

"(a) Under prevailing economic conditions, individual employes do not possess full freedom of association or actual liberty of contract. Employers in many instances, organized in corporate or other forms of ownership associations with the aid of government authority, have superior economic power in bargaining with employes. This growing inequality of bargaining power substantially and adversely affects the general welfare of the State by creating variations and instability in competitive wage rates and working conditions within and between *industries*, and by depressing the purchasing power of wage earners, thus—(1) creating sweatshops with their attendant dangers to the health, peace, and morals of the people; (2) increasing the disparity between production and consumption; and (3) tending to produce and aggravate recurrent business depressions. The denial by some employers of the right of employes to organize and the refusal by employers to accept the procedure of collective bargaining tend to lead to strikes, lock-outs, and other forms of *industrial* strife and unrest, which are inimical to the public safety and welfare, and frequently endanger the public health. (Italics supplied.)

· · · · · · · · · · ·

"(d) All the provisions of this act shall be liberally construed for the accomplishment of this purpose."

In section 3, 43 PS §211.3, it is stated:

### Definitions

"When used in this act—. . .

"(c) The term 'employer' includes any person acting, directly or indirectly, in the interest of an employer, but shall not include the United States or the Commonwealth, or any political subdivision thereof, or any person subject to the Federal Railway Labor Act or the National Labor Relations Act, as amended from time to time, or any labor organization (other than when acting as an employer), or anyone acting in the capacity of officer or agent of such labor organization.

"(d) The term 'employe' shall include any employe, and shall not be limited to the employes of a particular employer, unless the act explicitly states otherwise, . . . but shall not include any individual employed as an agricultural laborer, or in the domestic service of any person in the home of such person, or any individual employed by his parent or spouse."

In view of the complete lack of judicial precedent in Pennsylvania on this precise question, the decision of the New York Court of Appeals in the case of Metropolitan Life Insurance Co. v. New York State Labor Relations Board et al., 280 N. Y. 194 (1939), may be regarded as persuasive authority. In that case the insurance company challenged the applicability of the act on the ground (among others) that the agents were not "employes" within the meaning of the statute. Justice Loughran said, at page 205:

"Over and above all such argumentation stands the engendering principle of the New York act . . . The purpose and policy there avowed—and the scheme of the act as a whole—dispel all doubt that these agents of Metropolitan are employees in the sense of section 701."

For an interesting discussion of the problem see the lower court opinion of Justice Steuer in this same case in 168 Misc. 948, 6 N. Y. S. (2d) 775 (1938). See also New York State Labor Relations Board v. McChesney, 175 Misc. 95, 27 N. Y. S. (2d) 866 (1940), where employes of a private hospital were held to be within the act; and Bank of Yorktown v. Boland et al., 172 Misc. 885, 16 N. Y. S. (2nd) 756, where Justice Pecora held that bank employes were covered by the act. Other labor board cases holding insurance agents to be embraced within the term "employe" are Prudential Insurance Company of America v. Wisconsin Labor Relations Board, case no. III, 892: C-64, March 24, 1939, digested in C. C. H. (LLS) 2A, Wis., §41,084; and Metropolitan Life Insurance Co. v. Massachusetts Labor Relations Commission, case no. C R 14-19, and C R 43, December 15, 1938, C. C. H. (LLS) 2A, Mass., §41,042.

2. As a basis for respondent's argument that it was not accorded a fair and impartial hearing, two general types of error are set up.

First, it is contended that the board did not comply with its own rules:

(a) That there were defects in the charge itself, in that it failed to set forth just what activity on the part of respondent amounted to an unfair labor practice, is one specific error complained of. While the authorities are unanimous in denouncing *arbitrary* action by administrative tribunals, it is well established that their decisions should not be upset by the failure to observe technical niceties or specific forms of procedure. Unless there is a showing of prejudicial error the board's findings must stand: National Labor Relations Board v. American Potash & Chemical Corp., 98 F.(2d) 488 (C. C. A. 9, 1938).

In ascertaining whether the inadequacy of the charge is sufficiently prejudicial to upset the entire proceeding we must first determine just what is the purpose of the

charge. It is abundantly clear that a charge is required for the purpose of giving information to the board so that it in turn can proceed to investigate. In overruling a petition for review on the ground that the charge was inadequate, the Circuit Court of Appeals for the Sixth Circuit said:

"It would seem clear, therefore, that the provisions of Article II, §4, of the Board's rules and regulations, are for the information of the Board, to apprise it of the nature of the unfair labor practices alleged with sufficient particularity to enable it to determine that the charges are substantial and not frivolous, and so that it may enter intelligently upon the exercise of its exploratory powers. . . . There has been no lack of due process in failure of the charge to particularize specific acts as constituting unfair labor practices, *when the complaint fairly apprises the respondent of acts alleged to do so"*: Consumers Power Co. v. National Labor Relations Board, 113 F.(2d) 38, 42, (1940). (Italics supplied.)

The amended complaint which was served on respondent on April 20, 1938, clearly sets forth the alleged acts constituting unfair labor practices and sufficiently apprises the respondent of what it will be called upon to disprove. In National Labor Relations Board v. Piqua Munising Wood Products Co., 109 F.(2d) 552, 557 (1940) (C. C. A. 6), the circuit court said:

"All that is requisite in a valid complaint before the Board is that there be a plain statement of the things claimed to constitute an unfair labor practice that respondent may be put upon his defense."

Judge Arant, dissenting in the above case, still agreed with the majority of the court that, so long as respondent is given reasonable notice and fair opportunity to defend himself, the niceties and precision of pleading required in criminal prosecutions and civil suits are not essential.

Even assuming that prior to the service of the amended complaint respondent was unaware of the exact nature of the charge against it, the record discloses that from the date of the amended complaint on April 25, 1938, until the decision and order of the board on May 7, 1940, hearings were held on seven different days. At any one of these hearings there was adequate opportunity for respondent to cross-examine witnesses and present a defense to these charges. Yet, on completion of the testimony adduced by the board, respondent presented no evidence whatever.

There is no merit, therefore, to respondent's contention that the filing of an amended complaint and a supplemental charge in contravention of the board's own rules was prejudicial to respondent's cause. See M. H. Ritzwoller Co. v. National Labor Relations Board, 114 F. (2d) 432 (C. C. A. 7, 1940).

(b) Another alleged error was the failure of the trial examiner to file an intermediate report. The record shows, however, that respondent was given adequate opportunity—and, as a matter of fact, even an extension of time—to file exceptions to the preliminary ruling of the board.

In any event, the filing of an intermediate report is not mandatory. The National Labor Relations Board refused to follow its usual practice of submitting a tentative report in the Mackay case and when this was alleged as error Mr. Justice Roberts ruled:

"The Fifth Amendment guarantees no particular form of procedure; it protects substantial rights": National Labor Relations Board v. Mackay Radio & Telegraph Co., 304 U. S. 333, 351 (1938).

Since the record shows abundant opportunity for respondent to answer the charges after being apprised of their exact nature, it cannot now complain that the failure of the board to follow its own rules in this respect was a deprivation of due process.

Second, it is contended that the conduct of the hearings shows bias, favoritism, and partiality.

This court does not, for a moment, take issue with the proposition of law reiterated in respondent's brief, *that an administrative proceeding must be full, complete, fair and impartial.* Nevertheless, it should be remembered that, so long as the rudimentary requirements of "fair play" have been complied with and the parties have not been denied substantial rights, the holdings of the board should not be lightly set aside. The mere fact that the board's procedure differs from that of a courtroom will not vitiate its decision. The board must investigate, prosecute and judge. This combination of duties makes it necessary to deviate from ordinary trial court procedure.

As a prosecutor, the board is much like the prosecuting attorney. It, too, is attempting to preserve a public interest. Allowing an interested party, the union organizer, to confer with the attorney for the board and suggest questions to be asked of the witnesses shows no more partiality than would similar consultations between a prosecuting witness and the district attorney in the trial of a case in criminal court. A fortiori it is not improper to permit such coöperative and collaborative questioning of witnesses in a proceeding which is not punitive but preventive. The few other isolated incidents complained of as indicating partiality on the part of the trial examiner cannot be regarded as prejudicial to the rights of respondent.

Of course, the mere fact that all the objections made by respondent were overruled and the decision of the board was adverse does not give rise to the conclusion that the hearings were conducted with partiality and unfairness: Continental Box Co., Inc., v. National Labor Relations Board, 113 F. (2d) 93 (1940) · (C. C. A. 5).

Respondent's final contention is that the delay in the proceedings calls for a reversal of the order.

Recognition that the fundamental policy of the act is to preserve a public interest and not to punish a guilty

employer has its special significance with regard to this question of delay. The person filing the charges and the board, on issuing the complaint, are under the duty to see that the interest of the public is preserved and protected. They should, therefore, exercise reasonable diligence in prosecuting the case and having it expeditiously disposed of.

It cannot be said that compelling the John Hancock Life Insurance Company at this time to post notices to the effect that it had been ordered in May 1940 to cease and desist from engaging in activities alleged to have taken place in 1937 will promote industrial peace. It seems obvious that to enforce now the whole of the board's order would probably tend to promote industrial strife.

That portion of the board's order which directed the respondent to "Cease and desist from in any manner interfering with, restraining or coercing its employes in the exercise of their rights to self-organization, to form, join or assist labor organizations, to bargain collectively through representatives of their own choosing and to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection, as guaranteed in section 5 of the 'Pennsylvania Labor Relations Act'," is hereby sustained.

That portion of the board's order which directed respondent to "(a) Prepare and post a copy of this decision and order in a conspicuous place readily accessible to employes, in each of its Philadelphia District Offices, nos. 1, 2, 3, 4, 5, and 6, within ten days from the date hereof, and have the same remain so posted for a period of 30 consecutive days; (b) make written reports to the Pennsylvania Labor Relations Board under oath or affirmation, at least once every 30 days for a period of 90 days, beginning 30 days from the date hereof, stating in detail the affirmative means taken to comply with this order, and the extent to which the same has been carried out," is hereby set aside.