■ CARTER-WALLACE, INC., Respondent, v TAMBRANDS INC., Appellant. [744 NYS2d 11] —Order, Supreme Court, New York County (Helen Freedman, J.), entered December 3, 2001, which, inter alia, granted plaintiff's cross motion for summary judgment declaring that defendant is obligated under the terms of the parties' purchase agreement to indemnify plaintiff with respect to all "cup test" claims asserted against it in the underlying action arising from plaintiff's sale of "gold sol" products and that plaintiff is not obligated to reimburse defendant for amounts paid by defendant to settle the "cup test" claims in the underlying action, unanimously affirmed, with costs.

In May of 1990, plaintiff purchased Hygeia Sciences Inc. (Hygeia), the wholly-owned subsidiary of defendant, which produced a five-minute pregnancy test kit and a 10-minute ovulation test kit, under the brand name FIRST RESPONSE. Both products used a technology known as "gold sol" in cup test form. The purchase agreement included an indemnity clause, pursuant to which defendant agreed to indemnify plaintiff for patent infringement claims relating to any "products which were being distributed by [Hygeia] at the time of the Closing," but which provided in subdivision (a), that such indemnity would not apply to damages resulting from "any claim of infringement to the extent that such infringement is caused by any change made in such products after the Closing Date." Following the purchase of Hygeia, plaintiff began to manufacture and distribute a faster one-minute pregnancy test kit and a three-minute ovulation test kit, under the names FIRST RESPONSE, ANSWER and ANSWER PLUS. These products utilized the same "gold sol" technology in cup test form as the FIRST RE-

SPONSE 5- and 10-minute tests had used, but in higher concentrations of solution to achieve the faster results. Thereafter, a third company, New Horizon, commenced an action for patent infringement based on the use of the "gold sol" technology by the present parties. It is undisputed that the higher concentrations of solution were not the basis for the New Horizon patent infringement claims. Defendant settled the patent infringement claims with New Horizon, but reserved its rights to recover from this plaintiff any portion of settlement that was not covered by the indemnity agreement. The issue in this action, then, is whether the FIRST RESPONSE, ANSWER and ANSWER PLUS one- and three-minute pregnancy and ovulation test kits were "products which were being distributed by [Hygeia] at the time of the Closing," within the meaning of the subject indemnity clause.

The motion court properly concluded that the only reasonable interpretation of the phrase at issue is that it covered the pregnancy and ovulation test kit products using "gold sol" technology in cup test form, not merely the 5- and 10-minute versions of those products. It is clear from the parties' negotiations on the indemnity clause, as well as the language of subdivision (a), that the parties intended that some changes could be made to the FIRST RESPONSE 5- and 10-minute pregnancy and ovulation test kits without taking the resulting products outside the indemnity clause. Defendant's interpretation of the agreement, to limit its indemnification obligation to claims of patent infringement arising solely from the sale of those specific FIRST RESPONSE 5- and 10-minute test products previously distributed by Hygeia, would render subdivision (a) of the indemnity clause meaningless, which is not a reasonable interpretation of the agreement (*see, Namad v Salomon Inc.*, 74 NY2d 751, 753; *Helmsley-Spear, Inc. v New York Blood Ctr.*, 257 AD2d 64, 69). Furthermore, the indemnity clause must be interpreted to give effect to its primary purpose (*see, Williams Press v State of New York*, 37 NY2d 434, 440). The primary purpose of the clause was to protect plaintiff from claimed patent infringements relating to the Hygeia products being distributed by Hygeia. A claim of such infringement would necessarily be based on the underlying technology, not the limited form in which it was being utilized at the time of the closing. This interpretation is also consistent with section 4.7 of the purchase agreement, the noncompete clause, which prohibited defendant from engaging in a business dealing with "products manufactured or marketed by [Hygeia]" as of the time of the closing. This language is nearly identical to that contained in the indemnity clause, and it is uncontested that the use of the

word "products" in the noncompete clause is far more expansive than the definition offered by defendant for substantially the same language in the indemnity clause. Thus, the motion court properly found defendant's proffered interpretation was not reasonable, and that the only reasonable interpretation of the indemnity clause was that it referred to pregnancy and ovulation test kits using the "gold sol" technology in cup test form, which includes the products here at issue. Concur—Williams, P.J., Andrias, Lerner, Rubin and Friedman, JJ.