Shah v 20 E. 64th St., LLC (2021 NY Slip Op 04587)





Shah v 20 E. 64th St., LLC


2021 NY Slip Op 04587


Decided on July 29, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 29, 2021
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Judith Gische
Barbara R. Kapnick Jeffrey K. Oing Peter H. Moulton


Index No. 156305/15 Appeal No. 13520-22 Case No. 2019-5113, 2019-5153, 2019-5154, 2020-01577 

[*1]Hemant Shah et al., Plaintiffs-Appellants-Respondents,
v
20 East 64th Street, LLC, Defendant-Respondent-Appellant, Urban Foundation/ Engineering, LLC, et al., Defendants-Respondents, Abelow Sherman Architects LLC et al., Defendants.



Plaintiffs appeal and defendant 20 East 64th Street, LLC cross-appeals from the judgment of the Supreme Court, New York County (Joel M. Cohen, J.), entered June 13, 2019, awarding damages to plaintiffs and against defendant 20 East 64th Street LLC, and the appeal and cross-appeals therefrom bringing up for review orders, same court and Justice, entered May 10, 2019, March 12, 2019, and December 5, 2018, and order, same court (Lynn R. Kotler, J.), entered September 27, 2017.




Law Office of Kenneth G. Robert, P.C., New York (Kenneth G. Roberts of counsel), for appellants-respondents.
Wade Clark Mulcahy, LLP, New York (Vivian Turetsky, Michael A. Bono and Douglas Giombarrese of counsel), for 20 East 64th Street LLC, respondent-appellant.
Mauro Lilling Naparty, LLP, Woodbury (Eric Z. Leiter and Anthony F. DeStefano of counsel), for Urban Foundation/Engineering, LLC, respondent.
Shaub, Ahmuty, Citrin & Spratt LLP, Lake Success (Jonathan P. Shaub, Timothy R. Capowski, Sofya Uvaydov and Sean E. Harriton of counsel), for Tri State Construction Corp., respondent.



MOULTON, J. 


Plaintiffs appeal and defendant 20 East 64th Street, LLC cross-appeals from the judgment of the Supreme Court, New York County (Joel M. Cohen, J.), entered June 13, 2019, awarding damages to plaintiffs and against defendant 20 East 64th Street LLC, and the appeal and cross-appeals therefrom bringing up for review orders, same court and Justice, entered May 10, 2019, March 12, 2019, and December 5, 2018, and order, same court (Lynn R. Kotler, J.), entered September 27, 2017.
Law Office of Kenneth G. Robert, P.C., New York (Kenneth G. Roberts of counsel), for appellants-respondents.
Wade Clark Mulcahy, LLP, New York (Vivian Turetsky, Michael A. Bono and Douglas Giombarrese of counsel), for 20 East 64th Street LLC, respondent-appellant.
Mauro Lilling Naparty, LLP, Woodbury (Eric Z. Leiter and Anthony F. DeStefano of counsel), for Urban Foundation/Engineering, LLC, respondent.
Shaub, Ahmuty, Citrin & Spratt LLP, Lake Success (Jonathan P. Shaub, Timothy R. Capowski, Sofya Uvaydov and Sean E. Harriton of counsel), for Tri State Construction Corp., respondent.
MOULTON, J.
These appeals arise out of property damage to plaintiffs' landmarked Italian renaissance mansion located on the Upper East Side of Manhattan. The damage occurred as the result of excavation and underpinning work by plaintiffs' neighbor, 20 East 64th Street LLC (20 East), during the renovation of its next-door mansion and the construction of a sub-basement for a bowling alley.
This type of property damage action would ordinarily present only garden-variety issues. However, this litigation presents a host of unusual problems stemming from the parties' agreement to a trifurcated trial of the action. Among other things, the agreement provided that a jury would decide whether defendants were responsible for any damage in connection with plaintiffs' tort claims and a judge would decide in a parallel nonjury trial whether 20 East was responsible for any damage in connection with plaintiffs' breach of contract claims.[FN1]
What ensued created the unusual issues that we confront here: The jury awarded plaintiffs $5 million for repair costs and $500,000 for alternative living expenses against defendants. After the nonjury trial, the judge awarded plaintiffs $6,255,007 for repair costs and $1,152,000 for alternative living expenses against 20 East.[FN2] A judgment has already been entered on the nonjury trial decision (the contract judgment). No judgment has been entered in connection with the jury's verdict.
Plaintiffs' appeal raises the following questions: 1) Is the contract judgment appealable as a final judgment, and 2) did Supreme Court correctly preclude plaintiffs' expert from giving testimony in the nonjury trial concerning plaintiffs' loss of market value in their home?
20 East's two cross appeals raise the following questions: 1) Did Supreme Court correctly deny 20 East's motion to set aside the damages that it awarded in the nonjury trial decision and adopt the jury's damages award[*2], and 2) did the court correctly find that plaintiffs were entitled to conditional contractual indemnification from 20 East?
We hold that the contract judgment is an appealable final judgment under CPLR 5501(a)(1), which brings up for review the prior orders that, along with the judgment, are the subject of plaintiffs' appeal and 20 East's cross-appeals, and we affirm the judgment and those orders.
Factual Background
In 2013, 20 East contracted with defendant Tri-Star Construction Corp. (Tri-Star) to act as construction manager on its mansion renovation, executing AIA Document A 134, the Standard Form of Agreement between Owner and Construction Manager as Constructor. Tri-Star subcontracted with defendant Urban Foundation/Engineering, LLC (Urban) to perform the excavation and underpinning work, executing AIA Document A-401-1997, the Standard Form of Agreement between Contractor and Subcontractor.
In 2014, 20 East approached plaintiffs for temporary access to their mansion, which plaintiffs had already listed for sale for $42 million. Plaintiff Hemant Shah and 20 East entered into a September 9, 2014 Agreement Granting License, Access and Indemnity (the Access Agreement). The Access Agreement contained a jury waiver clause.[FN3]
Plaintiffs claimed that on or about November 21, 2014, they had discovered damage to their home. They claimed that the exterior wall had sunk, the interior walls and ceilings had cracked, and the interior floors had shifted due to soil erosion from underground water. After efforts to resolve the dispute failed, plaintiffs commenced this litigation in 2015. Their home has still not been repaired.
Procedural Background
The procedural history of this litigation is lengthy and complex. However, a recitation of that history is necessary to understanding the issues presented here.
In June 2015, plaintiffs commenced an action against 20 East for property damage. Plaintiffs subsequently amended the complaint, as is relevant here, to assert claims against defendants Tri-Star and Urban. In the amended complaint, plaintiffs asserted causes of action against 20 East, Tri-Star, and Urban for strict liability under Administrative Code of City of NY § 3309.4, negligence, and nuisance. Plaintiffs also sought punitive damages. Plaintiffs asserted a breach of contract cause of action and a contractual indemnification cause of action against 20 East. Finally, plaintiffs asserted a trespass cause of action against 20 East and Tri-Star. In their answers, defendants asserted cross claims against each other for common-law and contractual indemnification.
In December 2016, plaintiffs disclosed that they intended to call real estate appraiser Michael Vargas to testify that their property sustained a substantial diminution in market value on dates before and after 20 East's renovation through the time of trial.[FN4] In his appraisal report, Vargas opined that the market value of plaintiffs' home was $35 million as of February 1, 2014, but [*3]he noted that plaintiffs had listed their property for $42 million shortly after the effective date of his report.
By order entered September 27, 2017, Supreme Court (Lynn R. Kotler, J.) ruled on the parties' numerous summary judgment motions (the indemnification decision). The court granted plaintiffs summary judgment on liability as against 20 East and Urban in connection with plaintiffs' statutory strict liability claim (but denied the motion as to Tri-Star). The court also granted plaintiffs summary judgment on their contractual indemnification claim against 20 East conditioned on a finding of a breach of contract. The court found that questions of fact existed as to Tri-Star's and Urban's negligence and 20 East's vicarious negligence. The court dismissed the nuisance and trespass causes of action. In addition, the court granted 20 East summary judgment against Urban on its cross claim for conditional contractual indemnification and against Tri-Star and Urban on its cross claims for conditional common-law indemnification. In granting plaintiffs conditional contractual indemnification, Supreme Court rejected 20 East's argument that the indemnification provision in the Access Agreement applied only to protect plaintiffs against claims by third parties and not for harm that plaintiffs suffered at the hands of 20 East. The court reasoned that the Access Agreement would support an attorneys' fee award because it provided that plaintiffs were entitled to recover damages, including reasonable attorneys' fees, incurred as the result of 20 East's breach of any of its obligations under the Access Agreement.
In September 2018, plaintiffs served Vargas's updated appraisal report. In his report Vargas opined that the market value of plaintiffs' home, absent any structural damage, was $24 million as of September 4, 2018. Vargas also adopted plaintiffs' theory that the structural damage prevented plaintiffs from selling their home from 2014 through the date of trial, resulting in an $11 million loss (the lost market value). Urban moved in limine, among other things, to preclude Vargas from testifying about the lost market value in both the nonjury and the jury trials. Tri-Star also moved to preclude evidence of the lost market value at trial, arguing that the expert's methodology was unsound. 20 East joined the motions. According to defendants, the law allowed plaintiffs to recover the lesser of the repair costs or the diminution in value of the property — not both. Defendants also contended that plaintiffs were not permitted to recover for mere market fluctuation.
By order entered December 5, 2018, Supreme Court (Joel M. Cohen, J.) granted defendants' motions and precluded plaintiffs from presenting expert testimony concerning the lost market value in the nonjury trial (the preclusion decision).[FN5]
More than a month earlier, the parties had agreed to conduct three trials in two phases pursuant to a stipulated order entered October 18, 2018 (the stipulated [*4]order). Phase I encompassed two distinct trials. The parties agreed that a jury would determine the amount of damages, if any, in connection with plaintiffs' strict liability claims against 20 East and Urban, and the amount of damages, if any, in connection with plaintiffs' negligence claims against 20 East, Urban, and Tri-Star. The parties further agreed that a judge would determine both liability and damages in connection with plaintiffs' breach of contract claims against 20 East. Then, in Phase II, a second jury trial would address defendants' liability on plaintiffs' negligence claims and, to the extent still pursued by plaintiffs, Tri-Star's liability on plaintiffs' strict liability claim. The parties also agreed that the jury would address defendants' cross claims for indemnification and, if permitted by the court, punitive damages. The stipulated order further provided that Tri-Star was permitted to participate in the jury trial on damages in Phase I even though liability against it had not been established. However, neither Tri-Star nor Urban was permitted to participate in the nonjury trial.
The jury trial on damages commenced on December 10, 2018. On December 18, 2018, the jury returned a verdict against 20 East, Tri-Star and Urban, awarding plaintiffs $5 million for repair costs and $500,000 for alternative living expenses.[FN6] Defendants filed posttrial motions for a new trial or a reduction of the damages awards. Supreme Court reduced the jury verdict by approximately $43,000 but denied the remainder of the motions.
On December 19, 2018, the day after the jury returned its verdict, the court heard one day of testimony on plaintiffs' breach of contract claims. Plaintiffs relied upon the same damages evidence that they presented in the jury trial.
In its nonjury trial decision entered March 12, 2019, Supreme Court found, among other things, that 20 East breached its contract with plaintiffs. The court acknowledged that "[t]he evidence presented to the Court on the contract claims during the . . . trial largely overlapped with the evidence presented to the jury." Nevertheless, departing from the $5 million awarded by the jury for repair costs, the court awarded plaintiffs $6,255,007 for repair costs. The court found the testimony of plaintiffs' expert Gary Bielins regarding those costs to be "credible and convincing" even though his employer had terminated him for cause.[FN7] The court also awarded plaintiffs $1,152,000 in alternative living expenses based on the credible testimony of plaintiffs' expert Vargas, departing from the $500,000 in damages awarded by the jury for those expenses. In addition, the court awarded plaintiffs damages related only to their breach of contract claims against 20 East. Thus, the court awarded attorneys' fees in an amount to be determined by a referee and statutory interest from November 21, 2014 until the entry of judgment.[FN8] The court ordered and adjudged that judgment be entered in the amounts stated.
20 [*5]East then filed a posttrial motion pursuant to CPLR 4404(a) to set aside the nonjury trial decision as inconsistent with the jury verdict and the court "to render a new Decision in Non-Jury Trial, adopting the jury verdict figures on damages." 20 East argued that the court improperly supplanted the jury's findings and that, by doing so, it violated the doctrines of res judicata and law of the case and the Seventh Amendment to the United States Constitution.
The court denied the motion by order entered May 10, 2019 (Joel M. Cohen, J.) (the 4404[a] decision). The court explained that it properly issued a second and separate damages award for repair costs and alternative living expenses because it assessed those damages in the context of a breach of contract claim rather than a tort claim. The court further found that the parties had stipulated that it would decide liability and damages on plaintiffs' breach of contract claims and make a decision independent of the jury's. Moreover, the court determined that, given the jury waiver clause in the Access Agreement, 20 East's Seventh Amendment and law of the case arguments failed.
The contract judgment was entered June 13, 2019 pursuant to the directives of the nonjury trial decision. The contract judgment awarded plaintiffs a total of $12,299,175.50 against 20 East, which consisted of $6,255,007 in repair costs, $1,152,000 for alternative living expenses, $3,040,931.50 in statutory interest, and $1,850,000 in costs and attorneys' fees through April 30, 2019.
The Phase II jury trial was held in July 2019. The jury returned a verdict finding both Tri-Star and Urban negligent and apportioning 60% of the liability to Tri-Star and 40% to Urban.
In June 2020, Tri-Star filed a motion to dismiss plaintiffs' appeal as improperly taken from a nonfinal judgment. Alternatively, Tri-Star sought to stay the appeal until a final judgment was entered or to obtain permission to file a respondent's brief and supplemental appendix. In July 2020, Urban cross-moved for similar relief and sought to consolidate all appeals arising from the trifurcated action. By order entered August 13, 2020, this Court granted the motions only to the extent of permitting Tri-Star and Urban to file respondents' briefs and a supplemental appendix without prejudice to raising the issues of appealability in their briefs.
Discussion
Finality of the Contract Judgment
We find that contrary to 20 East's, Tri-Star's, and Urban's arguments, the contract judgment is a final judgment, the appeal from which brings up for review the orders that are, along with the judgment, the subject of plaintiffs' appeal and 20 East's cross appeals.
An appeal from a final judgment brings up for review "any non-final judgment or order which necessarily affects the final judgment . . . , provided that such non-final judgment or order has not previously been reviewed by the court to which the appeal is taken" (CPLR 5501[a][1]). Thus, only an appeal from a final [*6]judgment will bring up for review prior nonfinal orders (see Rivera v Montefiore Med. Ctr., 123 AD3d 424, 427 [1st Dept 2014], affd 28 NY3d 999 [2016]). "The concept of finality is a complex one that cannot be exhaustively defined in a single phrase, sentence, or writing" (Burke v Crosson, 85 NY2d 10, 15 [1995]).
Our conclusion that the contract judgment is a final judgment starts with the definition of a judgment. "A judgment is the determination of the rights of the parties in an action or special proceeding and may be either interlocutory or final" (CPLR 5011; see also CPLR 105 [k] ["The word 'judgment' means a final or interlocutory judgment"]). "[A] fair working definition of the concept can be stated as follows: a 'final' order or judgment is one that disposes of all of the causes of action between the parties in the action or proceeding and leaves nothing for further judicial action apart from mere ministerial matters" (Burke, 85 NY2d at 15).
Unlike a final judgment, "[a]n interlocutory judgment is an intermediate or incomplete judgment, where the rights of the parties are settled but something remains to be done. As when there is an accounting to be had, a question of damages to be ascertained, or a reference required to determine the amount of rent due for use and occupation" [sic] (Cambridge Val. Natl Bank v Lynch, 76 NY 514, 516 [1879]). Interlocutory judgments are sometimes used in a bifurcated personal injury action to permit the immediate appeal of a liability finding prior to the determination of damages (see Siegel NY Prac § 410 at 694 [4th ed 2005]). Of course, the contract judgment is based on Supreme Court's liability and damages determination.
Preliminarily, we agree with defendants that the exceptions to finality of implied severance and party finality do not apply. As explained in Burke v Crosson, implied severance applies only where the judgment resolves causes of action that "do not arise out of the same transaction or continuum of facts or out of the same legal relationship as the unresolved causes of action" (85 NY2d at 16). Defendants correctly note that plaintiffs' contract claims against 20 East were based in part on the excavation work at 20 East's property, which was also at issue in plaintiffs' tort claims. In addition, both the contract and the tort claims focused on compliance with the same rules and regulations. Thus, the breach of contract claims arose out of the same continuum of facts as the pending tort claims, and there is no implied severance.
"Under the party finality doctrine, an order or judgment that disposes of all of the claims . . . involving a particular party is final and appealable . . . as to that party, even though other claims . . . that involve other parties remain pending" (12-5611 Weinstein-Korn-Miller, NY Civ Prac CPLR ¶ 5611.04 [2021]) [Note: online treatise]. In light of plaintiffs' pending tort claims, there is no party finality.[FN9]
As to express severance, however, we disagree [*7]with defendants. Tri-Star acknowledges that a court may order the severance of one or more causes of action and then direct entry of a judgment on those causes of action (see CPLR 5012 ["The court, having ordered a severance, may direct judgment upon a part of a cause of action or upon one or more causes of action as to one or more parties"]; see also CPLR 603 ["In furtherance of convenience or to avoid prejudice the court may order a severance of claims, or may order a separate trial of any claim, or of any separate issue. The court may order the trial of any claim or issue prior to the trial of the others"]). However, Tri-Star contends that express severance does not apply because the nonjury trial decision "ordered and adjudged" that judgment shall be entered for a sum certain but did not include the language of express severance.
It is evident from the decision that Supreme Court intended that the judgment be final, not interlocutory, when it "ORDERED AND ADJUDGED that judgment shall be entered" against 20 East in the amount of $6,255,007 for the cost of repairing their home, $1,152,000 for the cost of alternative living expenses, statutory interest, and reasonable attorneys' fees in an amount to be determined by a Special Referee. Moreover, Supreme Court had the authority to order a severance (see 10-5012 Weinstein-Korn-Miller, NY Civ Prac CPLR ¶ 5012.04 [2021] ["wide discretion is accorded the lower courts in ordering severance"]) [Note: online treatise ].[FN10] Severance also comports with the procedural history of the action and the parties' agreement, in the stipulated order, to separate plaintiffs' breach of contract claims from the remainder of the action and have those claims adjudicated by the court.
Accordingly, Supreme Court's nonjury trial decision effects an express severance of the remainder of the action from plaintiffs' fourth cause of action (breach of contract) and fifth cause of action (contractual indemnification), and upon such severance directs the entry of judgment on those causes of action as against 20 East and the continuation of the remainder of the action (see Weizenecker v Weizenecker, 72 NY2d 809 [1988], denying lv to appeal from 140 AD2d 517 [2d Dept 1988] [modifying dismissal of complaint by finally disposing of certain causes of action and transferring another cause of action to Surrogate's court for prosecution, without using language of severance]; see also New York Court of Appeals Civil Jurisdiction and Practice Outline at 34 [Sept 2020]).
Moreover, express severance obviates the likely possibility that there will impermissibly be two judgments in this action (see CPLR 5012; see also Bennett v Long Is. Light. Co., 262 AD2d 437, 438 [2d Dept 1999] ["without a severance there can be only one judgment entered in a civil action"]).
Contrary to defendants' argument, the pending collateral source hearing does not change our analysis. The collateral source hearing was scheduled in connection with "finalizing judgments [*8]arising from the jury verdicts." The contract judgment is not a judgment arising from the jury verdicts. Therefore, the resolution of the collateral source hearing cannot affect the contract judgment.
Moreover, Tri-Star's and Urban's professed intent to appeal from any judgment that is entered in connection with the jury verdicts does not change our view. Tri-Star, which was not a participant in the nonjury trial, contends that the speculative testimony of plaintiffs' expert Gary Bielins in the jury trial necessarily affects the contract judgment because Supreme Court also relied on his testimony to support its damages award. Urban, also a nonparticipant in the nonjury trial, adds that Bielins's testimony was improperly based on hearsay. However, 20 East did not argue that Bielins's testimony was speculative or impermissibly based on hearsay when it moved solely to vacate the damages awarded in the nonjury trial decision. Tri-Star's and Urban's argument is without merit because it incorrectly presupposes the court was not an independent factfinder.[FN11]
The Preclusion Decision
Supreme Court correctly precluded Vargas's lost market value testimony. To understand why this was correct it is necessary to understand how plaintiffs calculated their $11 million loss. According to plaintiffs, 20 East's breaches of the Access Agreement prevented them from selling their home for $35 million. That figure was based on Vargas's valuation of plaintiffs' home in February 2014 - - a date nine months prior to the structural damage to their home. Plaintiffs contend that by September 4, 2018 their home was worth only $24 million. Accordingly, plaintiffs argue that they are entitled to the difference between the $35 million value of their home as of February 2014 and the $24 million value of their home as of September 4, 2018. Plaintiffs' theory also assumes that as the result of 20 East's breaches they were "forced to take their home off the market" after it was damaged and that they were prevented from re-listing it because it was not repaired.
Plaintiffs' arguments are fatally flawed. Contrary to plaintiffs' contention, paragraph 18 of the Access Agreement does not provide for lost market value damages. Paragraph 18 requires that 20 East "indemnify, defend and hold harmless" plaintiffs from "any and all" "damages [and] losses" that may be "incurred" by plaintiffs "arising from" 20 East's "[w]ork," "acts or omissions," or "breach of any of its obligations under this Agreement." Plaintiffs focus on the phrase "any and all" damages and losses but improperly ignore the word "incurred." Although plaintiffs complain that Supreme Court imposed an impossible and unfair burden on them because their loss was not "realized" by a sale that was prevented by 20 East, the court merely construed the plain language of the Access Agreement.
Contrary to plaintiffs' argument, Levine v Shell Oil Co. (28 NY2d 205 [1971]) does not dictate a different result. In Levine, the Court found [*9]that the "unmistakable intent of the parties" was that the indemnity required that the third-party defendant (the plaintiff's employer) indemnify an oil company against its own active negligence even though the provision fell short of expressly stating that the contract's coverage extended to the company's active negligence (id. at 212). However, in contrast to the language in this case, the language of the indemnity in Levine did not contain the word "incurred." In addition, the loss was in fact realized by a jury verdict in the plaintiff's favor (id. at 209).
Nor do the purpose and the surrounding circumstances of the Access Agreement support plaintiffs' argument that they are entitled to recover their lost market value. The fact that the Access Agreement uses the words "protect," "protective," "protection" and "protected" no less than 30 times cannot alter the plain meaning of the contract.
Plaintiffs also unpersuasively argue that they are entitled to both the repair costs and lost market value under contract law in order to be made whole and to be placed in the same position that they would have been in had the damage not occurred. Absent an indemnity providing for lost market value, plaintiffs were made whole by the court's award for repair costs and alternative living expenses (see Fisher v Qualico Contr. Corp., 98 NY2d 534, 540 [2002] ["As recognized in our case law, however, replacement cost and diminution in market value are simply two sides of the same coin. Each is a proper way to measure lost property value, the lower of the two figures affording full compensation to the owner"]).
In addition, the court correctly precluded Vargas's testimony, because plaintiffs' lost market value constituted 'unusual or extraordinary damages' that were not reasonably foreseen or within the contemplation of the parties when the Access Agreement was executed (Kenford Co. v County of Erie, 73 NY2d 312, 319 [1989]). 
Plaintiffs rely on Kenford Co., but the decision undermines their position. In Kenford, the Court of Appeals reversed a jury verdict awarding the plaintiff $6.5 million in damages for lost appreciation because neither the contract nor the record evidence demonstrated that the parties reasonably contemplated, or would have contemplated, that the County would assume liability for lost appreciation if a stadium was not built. Nevertheless, plaintiffs point to the Court's statement that, in assessing the reasonable contemplation of the parties, a court should consider the contract's nature, purpose and particular circumstances known by the parties and '"what liability the defendant fairly may be supposed to have assumed consciously, or to have warranted the plaintiff reasonably to suppose that it assumed, when the contract was made"' (id. at 319 [internal quotation marks omitted]). Plaintiffs stress that their listing was public, that they expressly told 20 East's representatives that their home was for sale, and that the Access Agreement contained [*10]a provision that "in the event Shah sells the Shah Property after the date hereof" the agreement "shall inure to the benefit of any person or entity that may succeed to Shah's interest in the Shah Property." According to plaintiffs, Kenford supports their contention that Supreme Court should have heard their trial evidence in order to determine whether 20 East fairly may be supposed to have consciously assumed the risk of a market decline if it damaged plaintiffs' home.
Notably, however, the Court in Kenford found that while the parties had a demonstrated expectation of increased property values and taxes, that expectation alone did not lead to the conclusion that the parties contemplated that the County would assume liability for Kenford's loss of anticipated appreciation (id. at 319-320). Similarly, the fact that 20 East knew that plaintiffs' home was for sale, without more, does not lead to the conclusion that the parties contemplated that 20 East would assume liability for plaintiffs' lost market value. Accordingly, neither the Access Agreement nor the record evidence demonstrates that the parties reasonably contemplated, or would have contemplated, that 20 East would assume the risk of lost appreciation in the value of plaintiffs' home in the event that it damaged the home.
Plaintiffs' additional argument, that their lost market value is foreseeable because the New York real estate fluctuates, falls flat. Plaintiffs argue that it was within 20 East's reasonable expectation that the market for their home could go down and that major damage would prevent the sale of the home during that decline. However, the fact that the market "could" go down does not make plaintiffs' lost market value foreseeable since it is equally foreseeable that the market "could" go up.
Moreover, plaintiffs' theory is based on speculation. Plaintiffs correctly observe that a factfinder may determine "hypothetical market value" based on expert testimony in certain situations (see e.g. City of Yonkers v State of New York, 40 NY2d 408, 413 [1976] [appraiser valued the amount of damages sustained by the City of Yonkers as the result of the State's partial taking of the City's property by eminent domain]). However, plaintiffs' theory is that a hypothetical buyer would have purchased their property for $35 million, the purported value of their home in February 2014. Plaintiffs never identified any lost buyers, did not produce evidence of any offers, and did not demonstrate why they would have accepted an offer that was $7 million lower than their listing price.
In addition, because plaintiffs have not sold their home, they seek to establish a "definitive" market loss by tethering their $24 million fair market valuation to the arbitrary date of September 2018, a date that was close to trial. However, plaintiffs do not indicate when their property will be re-listed for sale. If they do sell their home at some point in the indefinite future, the market value may very well [*11]be higher than $24 million. Thus, plaintiffs' lost market value is akin to the "transitory" change in stock price in Fresh Del Monte Produce N.V. v Eastbrook Caribe A.V.V. (40 AD3d 415, 417 [1st Dept 2007]), which was unrecoverable despite the fact that the indemnification clause (unlike the one in the instant case) covered a "decline in value." Notably, in Fresh Del Monte Produce the Court reasoned that allowing "for unrealized losses due to transitory declines in price" would unreasonably permit a "windfall award of 'damages' where none have been sustained," which is a concern that is equally applicable here (id. at 418, 419; see also RSB Bedford Assoc. LLC v Ricky's Williamsburg, Inc., 112 AD3d 526, 527-528 [1st Dept 2013] [lost profits from the sale of a building at some point in the indefinite future are speculative]).
More importantly, plaintiffs are seeking to recover an $11 million loss that is not attributable to 20 East's breaches of the Access Agreement. Plaintiffs cannot reasonably argue that 20 East prevented them for selling their property based on a valuation coinciding with a date nine months before their property was even damaged. Further, although it may not have been prudent for plaintiffs to sell their home in its damaged condition because it would presumably be worth less, plaintiffs do not explain how 20 East's breaches of the Access Agreement actually prevented a sale.
The 4404(a) Decision
Supreme Court correctly denied 20 East's motion to set aside the damages awarded in the nonjury trial decision and to conform the award to the amount of damages assessed by the jury. 20 East's motion is based on its meritless contention that the court's damages award must be set aside pursuant to res judicata, law of the case, and the Seventh Amendment to the United States Constitution.
Preliminarily, we disagree with the court's reasoning that its and the jury's different damages assessments can be explained by the different legal standards applicable to breach of contract and tort. Nevertheless, 20 East's position is unsound.
Under the doctrine of res judicata "a valid final judgment bars future actions between the same parties on the same cause of action" (Parker v Blauvelt Volunteer Fire Co., 93 NY2d 343, 347-348 [1999]). "Neither the verdict of a jury nor the findings of a court in a prior action upon the precise point involved in a subsequent action between the same parties constitutes a bar, unless followed by a judgment based thereon" (Rudd v Cornell, 171 NY 114, 128-129 [1902]; see also Peterson v Forkey, 50 AD2d 774, 774—775 [1st Dept 1975] [entry of a judgment is a prerequisite of res judicata]). "Principles of res judicata are inapplicable when, as in this case, the two determinations arise in the same action" (Moezinia v Damaghi, 152 AD2d 453, 457 [1st Dept 1989]). Because no judgment has been entered in a prior action between the instant parties based on the same harm and arising out of the same or related facts, the doctrine [*12]of res judicata does not apply in this action.
Law of the case similarly has no application here. That doctrine applies to judicial determinations of law (see Baldasano v Bank of N.Y., 199 AD2d 184, 185 [1st Dept 1993] ["the doctrine of the law of the case applies only to legal determinations that were necessarily resolved on the merits in the prior decision"]). To state the obvious: A jury verdict is not a judicial determination of law. Moreover, given the jury waiver, 20 East's argument that the court was required to accept the jury's factual findings based on law of the case is misplaced.
Nor did Supreme Court's different damages assessments run afoul of the Seventh Amendment to the United States Constitution, which provides that "no fact tried by a jury, shall be otherwise re-examined in any Court of the United States" (US Const Amend VII). The Seventh Amendment is not applicable to state court cases (see Marko v Korf, 166 AD3d 545, 546 [1st Dept 2018]). Plaintiffs also cite to inapposite federal court cases recognizing a litigant's right to have a single jury pass on a common issue of fact under the Seventh Amendment and urging caution when dividing issues between two jury trials to prevent the reexamination of facts.
In addition, 20 East unpersuasively argues that Supreme Court violated article 1, section 2 of the New York State Constitution by not adopting the jury's damages verdict. While that provision provides that trial by jury is "guaranteed by constitutional provision," it also provides that "a jury trial may be waived by the parties in all civil cases" (NY Const, art I, § 2). Notably, because 20 East waived its right to a jury trial in the Access Agreement, its argument is meritless.
Moreover, the court's refusal to grant 20 East's motion was not error on the ground either that the different damages awards created a host of issues, including whether 20 East can pass the breach of contract damages through to Tri-Star and Urban, or that the parties did not "fully grasp" the issue.[FN12] While 20 East points to the dangers in litigating the same issue in a split trial, that does not alter the fact that the parties agreed to this procedure in the stipulated order. Nor does Supreme Court's failure to "honor" the jury's verdict run contrary to the court's responsibility to preserve the integrity of the judicial process, given the unorthodox procedural path charted by the parties.
The Indemnification Decision
Supreme Court correctly found that plaintiffs were entitled to a conditional award of attorneys' fees against 20 East based on the plain language of the indemnification clause in the Access Agreement.
Paragraph 18 of the Access Agreement provides:
"Owner agrees to indemnify, defend and hold harmless Shah and
the other occupants of the Shah Property from and against any and all
causes of action, damages, claims, demands, judgments, liens,
litigation, liability, penalties, orders, losses, costs, or expenses,
including reasonable [*13]attorneys' fees, which may at any time be
asserted against or incurred by Shah or the other occupants of the
Shah Property, arising from: (i) the Work and/or the Protective
Measures and Repairs, (ii) any acts or omissions of Owner or its
contractors with respect to the 20 East 64th Street Property or the
Shah Property; and (iii) Owner's breach of any of its obligations
under this Agreement."
We reject 20 East's argument that paragraph 18 does not cover claims between plaintiffs and 20 East (i.e., intraparty claims) with the "unmistakable clarity" required by Hooper Assoc. v AGS Computers (74 NY2d 487, 491-492 [1989]). According to 20 East, because the indemnification provision applies to foreseeable third-party claims, Supreme Court erred in concluding that the Access Agreement "can only refer to a direct claim by plaintiffs against 20 East for damages" covering attorneys' fees incurred by plaintiffs "based on 20 East's breach of the License agreement."
20 East correctly notes that paragraph 18(i) applies to foreseeable third-party claims, as evidenced by, among other things, paragraph 17's requirement that 20 East obtain general liability insurance and name plaintiffs as additional insureds. However, paragraph 18 also applies to intraparty claims under paragraph 18(iii). 20 East ignores paragraph 18(iii) which serves a different purpose than paragraph 18(i). Paragraph 18(iii) provides plaintiffs with indemnification for 20 East's breaches of its obligations under the Access Agreement (including the contractual obligations to properly perform the work and make repairs). It exclusively applies to plaintiffs because plaintiffs are the only party to the Access Agreement to which 20 East's obligations run. Thus, because paragraph 18(iii) exclusively refers to intraparty claims, the parties' intent to provide intraparty indemnification (including attorneys' fees) satisfies the Hooper standard even though other provisions apply to third-party claims.
Contrary to 20 East's argument, the holding of Hooper does not support its argument. In Hooper, the Court found that "[c]onstruing the indemnification clause as pertaining only to third-party suits affords a fair meaning to all of the language employed by the parties in the contract and leaves no provision without force and effect" (id. at 493).[FN13] In reaching this conclusion, the Court pointed to other provisions in the contract that are unmistakably related only to third-party claims. The Court observed that article 9(D) of the contract required that the plaintiff promptly notify the defendant of any claim or litigation to which the indemnity set forth in sub-paragraph 9(A) applied, and provided that the defendant may assume the defense of any such claim or litigation (id. at 492-493). Thus, the Court reasoned that "[t]o extend the indemnification clause to require defendant to reimburse plaintiff for attorney's fees in the breach of contract action against defendant would render these provisions [*14]meaningless because [they have] no logical application to a suit between the parties" (id.).
By contrast, the highly inclusive language of the Access Agreement supports indemnity for intraparty claims under paragraph 18(iii) and no other provision in the Access Agreement would be rendered meaningless if paragraph 18(iii) were read in this manner (see Crossroads ABL LLC v Canaras Capital Mgt., LLC, 105 AD3d 645, 645-646 [1st Dept 2013] [indemnification provision covered intraparty claims because the parties used highly inclusive language and no other provision in the agreement would be rendered meaningless if the provision were read to include those claims]). Unlike the provision in Hooper, the indemnification provision here does not pertain "only" to third-party claims but applies to both intraparty and third-party claims under separate and distinct provisions.
Nor does 20 East's selective citation to the phrase "defend and hold harmless" dictate a different result in light of 20 East's agreement to "indemnify" plaintiffs.
Accordingly, the judgment of the Supreme Court, New York County (Joel M. Cohen, J.), entered June 13, 2019, awarding damages to plaintiffs and against defendant 20 East 64th Street LLC, and the appeal therefrom bringing up for review orders, same court and Justice, entered May 10, 2019, March 12, 2019, and December 5, 2018, and order, same court (Lynn R. Kotler, J.), entered September 27, 2017, should be affirmed, without costs. The appeals from underlying orders should be dismissed, without costs, as subsumed in the appeals from the judgment.
Judgment, Supreme Court, New York County (Joel M. Cohen, J.), entered June 13, 2019, awarding damages to plaintiffs and against defendant 20 East 64th Street LLC, and the appeal therefrom bringing up for review orders, same court and Justice, entered May 10, 2019, March 12, 2019, and December 5, 2018, and order, same court (Lynn R. Kotler, J.), entered September 27, 2017, affirmed, without costs. The appeals from underlying orders dismissed, without costs, as subsumed in the appeals from the judgment.
Opinion by Moulton, J. All concur.
Gische, J.P., Kapnick, Oing, Moulton, JJ
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: July 29, 2021



Footnotes

Footnote 1: A jury waiver clause in plaintiffs' contract with 20 East prevented the jury from hearing plaintiffs' breach of contract claims.

Footnote 2: 20 East points out that the inconsistent awards create problematic issues for its cross claims against the other defendants for common-law and contractual indemnification. However, that issue is not now before us. 

Footnote 3: The jury waiver clause provided, "THE PARTIES HERETO IRREVOCABLY AND UNCONDITIONALLY WAIVE ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, SUIT OR COUNTERCLAIM ARISING IN CONNECTION WITH, OUT OF OR OTHERWISE RELATING TO THIS AGREEMENT."

Footnote 4: As discussed infra, plaintiffs base their diminution in market value theory on their unreasonable argument that 20 East prevented them from selling their property on a date nine months before their property was even damaged.

Footnote 5: Although not at issue in this appeal, in an earlier decision the court similarly precluded plaintiffs from presenting Vargas's lost market value testimony in the jury trial.

Footnote 6: The alternative living expenses cover plaintiffs' costs for residing at another location until their home is repaired.

Footnote 7: In a termination letter, Bielins's employer alleged, among other things, that Bielins was terminated for cause for engaging in fraud and taking kickbacks. In the jury trial, Bielins denied any wrongdoing, but he conceded that he was fired for cause.

Footnote 8: Plaintiffs and 20 East subsequently stipulated to the amount of $1.8 million in attorneys' fees.

Footnote 9: We do not consider plaintiffs' argument, improperly made for the first time in reply, that implied severance and party finality exist because plaintiffs "waive their right to a judgment on the jury award." Plaintiffs' waiver, however, remedies the problem that plaintiffs would receive a windfall by aggregating the damages awarded by the judge and the jury.

Footnote 10: Because Supreme Court decided both liability and damages in connection with the breach of contact claims, no concern exists that relief within a single cause of action will be impermissibly severed (see Burke, 85 NY2d at 18 n 5).

Footnote 11: Even if the contract judgment were not a final judgment, we would still reach the merits of plaintiffs' appeal of the preclusion decision and 20 East's cross appeal regarding contractual indemnification. Plaintiffs' notice of appeal contains an express reference to the nonjury trial decision which in turn makes an express reference to the preclusion decision. The nonjury trial decision and the preclusion decision are attached as exhibits to plaintiffs' notice of appeal. As such, defendants had the requisite notice of the basis for plaintiffs' appeal, and we would overlook any defect in form, in the interest of justice, under CPLR 5520(c) (see Vertical Computer Sys., Inc. v Ross Sys., Inc., 11 AD3d 375, 380 [1st Dept 2004]). We would reach the merits of 20 East's cross appeal regarding contractual indemnification based on the same reasoning.

Footnote 12:20 East asserts that the parties did not fully grasp or forecast that different damages would be awarded by the judge and the jury. However, Supreme Court raised the issue at a pretrial conference on November 16, 2018. During that conference, 20 East's counsel stated in relevant part, "I would agree that your Honor's decision would be independent. You can, of course, empanel an advisory jury, ask the jury interrogatories, you know, that may be overlapping with the tort claim and perhaps that, you know, their view of the evidence will inform your decision. I do think it's ultimately your decision." Supreme Court responded, "But just the repair cost issue as an example . . . the jury and I don't have to come back the same way." Then, after hearing 20 East's counsel's comment, the court continued, "If anybody has any different views in the pretrial memo, let me know, but as I see it, you know, essentially the plaintiffs get the highest of the two. You can appeal either or both. And the cross-claim component is obviously complicated for the second trial because if you have a higher judgment against the contracting party, then on the tort claim I don't know." In the same discussion the court also commented, "[I]f there's a different number on the two claims it's going to raise some interesting questions in terms of, you know, you have to now subdivide the indemnification under the contract claim versus the indemnification just comparing the tort claims. But we get to think about that for the next trial. But I just wanted to make sure we were on the same page, that you don't necessarily get the same result even on the same question in terms of how much is it going to cost to repair the Shahs' house. You might get a different answer from me than the jury."

Footnote 13: The indemnity in Hooper provided, in part:
"9. INDEMNITY
"(A) AGS shall at all times indemnify and hold harmless HLTD [Hooper], its successors and assigns and any of its officers, directors, employees representatives, and/or agents, and their heirs, executors, administrators, successors and assigns or each of them against and from any and all claims, damages, liabilities, costs and expenses, including reasonable counsel fees arising out of:
"(i) Any breach by AGS of any express or implied warranty hereunder and any express representation or provision hereof;
"(ii) The performance of any service to be performed hereunder;
"(iii) Infringement of the patent rights, copyright or trademark (of which AGS is not the patentee or assignee or has not the lawful right to use or transfer same) of any person, firm corporation [sic] as a result of any use by HLTD, its successors and assigns and any of its officers, directors, employees, representatives, and/or agents of the system hereunder;
"(iv) The installation, operation, and maintenance of the system; or
"(v) Mechanic's liens for labor and materials"
(Hooper, 74 NY2d at 490 n 1).